IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA MARIE PRATHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. B-03-0136 |
| | § | |
| UTILIQUEST, L.L.C., MELANIE | § | |
| MCGINNESS AND SUE OBREGON, | § | |
| | § | |
| Defendants. | § | |

UTILIQUEST'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND

Defendant UtiliQuest files this Response to Plaintiff's Motion to Remand.

I.

INTRODUCTION

The plaintiff filed her Original Petition ("Petition") in the 103rd Judicial District, Cameron County, Texas, on June 30, 2003 against UtiliQuest, Melanie McGinness and Sue Obregon asserting the following claims for relief: (1) national origin discrimination by UtiliQuest in violation of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. §§ 21.001-21.556 (Vernon Supp. 2000); (2) gender discrimination by UtiliQuest in violation of the TCHRA; (3) retaliation by UtiliQuest in violation of the TCHRA; (4) negligent supervision, retention and misrepresentation by UtiliQuest; and (5) intentional infliction of emotional distress by UtiliQuest, McGinness and Obregon. (Petition, *generally*).

The intentional infliction of emotional distress claim against the individuals appears to be superfluous in light of the remedies available for employment discrimination under the TCHRA, and a party (UtiliQuest) that can pay a judgment. In fact, the real motivation for the plaintiff's additional claim is simple: By adding a non-diverse individual defendant (who, in comparison to

the corporate defendant, has little in the way of assets which could satisfy a judgment of liability), diversity can be defeated and federal court jurisdiction can be evaded. However, under the facts as pleaded in the plaintiff's Petition, there is no possibility that the plaintiff can establish a viable cause of action against either McGinness or Obregon. Consequently, as UtiliQuest timely demonstrated in its Notice of Removal, Obregon has been fraudulently joined, diversity jurisdiction exists, and the Plaintiff's Motion to Remand should be denied.

II.

ARGUMENT AND AUTHORITY

A.    Obregon is a Sham Defendant, and Diversity of Citizenship Therefore Exists.[1]

The plaintiff superficially asserts that Obregon, a citizen of Texas, was properly joined and that her presence as a defendant defeats diversity jurisdiction. (Plaintiff's Motion to Remand at p. 2). The plaintiff's Petition, however, is skeletal with respect to the facts upon which the intentional infliction allegation against Obregon is based, stating only:

> On or about May 15, 2002, Plaintiff was wrongfully terminated because she was pregnant. When Plaintiff found out she was pregnant she notified her supervisor, Defendant Sue Obregon and she in turn notified Defendant Melanie McGinness the Human Resource/Benefits Coordinator. On or about March 12, 2000, Defendant Melanie McGinness sent Plaintiff a memo explaining to her that since she was pregnant she should apply for short term disability benefits due to her pregnancy, since she was not eligible for FMLA. Therefore, her employment position with UtiliQuest, LLP could not be held for the time she was out for the delivery of her baby and she would be administratively terminated as of her last day of work. If she wished to return to work after the delivery of her baby she would be required to reapply for a job. She was not guaranteed that a position would be available.

---

[1] Although McGinness, as a citizen of Georgia, was not fraudulently joined for the sole purpose of defeating diversity, the intentional infliction claim is equally meritless with respect to her, and she will likely seek dismissal of that claim along with Obregon at the appropriate time. Obregon was only recently served, and therefore, the procedural opportunity to file a motion to dismiss has not been available to her. Obregon's answer is due on September 23, and her Motion to Dismiss will be filed at that time.

2

(Petition at ¶ 11). Based upon this, and only this, dry recitation of facts, the plaintiff asserts that Obregon intentionally inflicted emotional distress upon her. (Petition at ¶ 19). In other words, the Petition alleges that Obregon broke the law when she notified UtiliQuest's human resource department of the plaintiff's pregnancy so that the company could initiate its short-term leave policy. (Petition at ¶ 11). This assertion is preposterous and inadequate as a matter of law. At no point does the Petition allege facts that Obregon behaved outrageously in the course of notifying UtiliQuest's human resource department of the plaintiff's pregnancy. (*See* Petition, *generally*). Perhaps most importantly, the petition makes no allegation, because it cannot, that Obregon was the decision-maker with respect to the plaintiff's eventual termination from the company. (Petition, *generally*).

The plaintiff fails to provide support for her separate allegations against Obregon because there is none. This lack of support is relevant to the Court's consideration of her Motion to Remand because, although the plaintiff correctly states that UtiliQuest must establish that she has "no possibility" of prevailing on her intentional infliction claim, she fails to acknowledge that the Court has the right to determine whether Obregon's alleged conduct was extreme and outrageous as a matter of law. *Wornick v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). Here, it is undisputed that the plaintiff was administratively terminated. It seems equally apparent that the basis for her intentional infliction claim is identical to the core allegation of her lawsuit against UtiliQuest—that she was terminated because she was pregnant. This conclusion is warranted based upon the plaintiff's failure to distinguish any allegations that would suggest that Obregon engaged in any extreme and outrageous behavior aside from participating in the process which led to the plaintiff's administrative termination. (Petition at ¶ 19). Despite the opportunity to do

3

so, the plaintiff provides no additional information, facts or allegations related to Obregon's conduct in her Motion to Remand. (Motion, *generally*).

      B.      <u>The Plaintiff Cannot State a Claim for Intentional Infliction of Emotional Distress</u>.

The plaintiff's failure to allege any facts distinguishing her intentional infliction claim from her employment discrimination and retaliation claims is critical. It is well-settled in Texas that mere employment disputes do not support a claim for intentional infliction. *Miller v. Galveston/Houston Diocese*, 911 S.W.2d 897, 899 (Tex. App.—Amarillo 1995, no writ). In fact, termination of an employee in and of itself does not constitute outrageous conduct. *Farrington v. Sysco Food Services, Inc.*, 865 S.W.2d 247, 254 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33-34 (5th Cir. 1992) (an employer is not liable for exercising its legal right to terminate an employee, even if the employer recognizes that the employee will suffer emotional distress as a result of the termination). Taken a step further, even assuming that Obregon's act of informing the human resource department of the plaintiff's pregnancy was motivated by discriminatory animus (which UtiliQuest and Obregon vigorously deny), it is well-settled that terminating an employee in violation of anti-discrimination statutes, in the absence of any extreme and outrageous conduct regarding the manner in which the termination is carried out, does not give rise to an intentional infliction claim. *Ugalde v. W. A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143-44 (5th Cir. 1991).[2] It follows then, that the alleged actions by Obregon, who was <u>not</u> the plaintiff's employer, <u>even taken as true</u>, cannot

---

[2] *See also Hockaday v. Texas Dep't of Criminal Justice*, 914 F. Supp. 1439, 1447-48 (S. D. Tex. 1996) (no outrageous conduct as a matter of law where plaintiff alleged violation of Whistleblower Act); *Beiser v. Tomball Hospital Authority*, 902 S.W.2d 721, 725 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (illegal conduct is insufficient alone, except in the most unusual circumstances, to support a claim of intentional infliction).

constitute extreme and outrageous conduct as a matter of law.[3] In short, even if the plaintiff were to have a valid claim involving a violation of anti-discrimination statutes, absent facts establishing outrageous behavior apart from the termination itself, the plaintiff cannot state a claim for intentional infliction of emotional distress as a matter of law.

In the seminal Fifth Circuit case on fraudulent joinder based upon a claim of intentional infliction of emotional distress in the employment context, the Court affirmed the district court's denial of the plaintiff's motion to remand. *Burden v. General Dynamics Corp.*, 60 F.3d 213 (5th Cir. 1995). The Court held that a plaintiff alleging age discrimination based upon his reassignment within the company could not state a separate claim for intentional infliction against individual defendants as a matter of law. Noting that the plaintiff faced a difficult task even if he had been terminated instead of merely reassigned, the Court stated:

> Texas courts have held that, as a matter of law, the fact of termination alone cannot constitute outrageous behavior; rather, the "extreme and outrageous" element focuses only on the *manner* of termination.

*Id.* at 221.[4] Here, the plaintiff does not, and cannot, allege any outrageous behavior on the part of Obregon. In a similar case involving the termination of an employee, the Northern District of Texas denied a motion to remand, holding that the plaintiff's intentional infliction of emotional distress claim against his supervisor failed to state a claim as a matter of law. *Chavez v. McDonald's Corp.*, 1999 WL 814527, at *3, 4 (N.D. Tex. Oct. 8, 1999) (attached as UtiliQuest Exhibit 1), *citing Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th cir. 1994) ("Under

---

[3] Moreover, there are no allegations that Obregon was the decision-maker with respect to the plaintiff's termination. In fact, the Petition itself concedes that the plaintiff was administratively terminated. (Petition at ¶ 11).

[4] *Citing Wornick Co.*, 856 S.W.2d at 735; *Cote v. Rivera*, 894 S.W.2d 536, 542 (Tex. App.—Austin 1995, n.w.h.); *Shaheen v. Motion Indus., Inc.*, 880 S.W.2d 88, 92 (Tex. App.—Corpus Christi 1994, writ denied) (terminated employee's allegation that employer's motivation was outrageous, but that manner of discharge was not, was insufficient to support intentional infliction of emotional distress claim).

Fifth Circuit jurisprudence, an employer's deplorable conduct does not constitute 'extreme and outrageous' conduct 'except in the most unusual cases.'")[5]

Since the plaintiff cannot prevail on her claim of intentional infliction of emotional distress, it follows that Obregon was fraudulently joined, and complete diversity between the parties exists.

## III.

## CONCLUSION

The plaintiff has done no more than allege that Obregon participated in a process which led to the plaintiff's administrative termination. As Fifth Circuit precedent has established, this allegation does not rise to the level of intentional infliction of emotional distress as a matter of law. Accordingly, this Court should find that Obregon was fraudulently joined in an effort by the plaintiff to evade federal diversity jurisdiction, and the plaintiff's Motion to Remand should be denied.

---

[5] Here, the plaintiff accuses Obregon only of administratively reporting the fact that she was pregnant to the human resources department. (Petition at ¶ 11). This behavior does not rise to the level of extreme and outrageous. *See, e.g., GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999) (finding that supervisor's behavior was extreme and outrageous when he created a "den of terror" through constant physical and verbal threats and assaults of employees); *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir. 1989) (finding that supervisor's placement of checks in employee's purse to make it appear that she was a thief was extreme and outrageous); *Wilson*, 939 F.2d at 1145 (5th Cir. 1991) (holding that the demotion of plaintiff, an executive manager with thirty years of experience, to menial, janitorial duties in an attempt to humiliate him into resigning was extreme and outrageous).

Respectfully submitted,

_____
Kerry E Notestine
State Bar No. 15116950
Fed. I.D. No. 2423
1301 McKinney Street, Suite 1900
Houston, Texas 77010
Tel: 713.951.9400
Fax: 713.951.9212

Attorney-in-Charge for Defendants
UtiliQuest
Melanie McGinness

**Of counsel:**

J. Bradley Spalding
State Bar No. 00786253
Fed. I.D. No. 21169
*and*
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
Tel: 713.951.9400
Fax: 713.951.9212

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to counsel of record by postage-prepaid, certified mail, return receipt requested, on this the 9th day of September 2003, addressed as follows:

Ruben R. Pena
LAW OFFICES OF RUBEN R. PENA, P.C.
P.O. Box 530160
222 W. Harrison
Harlingen, Texas 78550

_____
J. Bradley Spalding

HOUSTON:158851.1 035266.1021

EXHIBIT 1

1999 WL 814527                                                                    Page 10
(Cite as: 1999 WL 814527 (N.D.Tex.))
**H**

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

Albert CHAVEZ, Plaintiff,
v.
McDONALD'S CORPORATION, et al., Defendants.

No. CIV.A. 3:99-CV-1718D.

Oct. 8, 1999.

MEMORANDUM OPINION AND ORDER

FITZWATER, District J.

*1 This discrimination action presents the questions whether plaintiff's supervisor can be held liable for violating the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann. §§ 21.001 -21.405 (West 1996 & Supp.1999), and committing the Texas-law tort of **intentional infliction** of **emotional distress**, and whether defendants properly removed the case based on diversity of citizenship. The court holds that plaintiff's TCHRA and **intentional infliction** claims against his supervisor must be dismissed and that, because the supervisor was **fraudulently** joined, defendants properly removed this case. The court grants the supervisor's **motion** to dismiss and denies plaintiff's **motion** to **remand**.

I

Plaintiff Albert Chavez ("Chavez"), who is Hispanic, sues defendants McDonald's Corporation ("McDonald's") and Zenola Worrill-Campbell ("Worrill- Campbell"), his African-American supervisor, alleging that they violated the TCHRA and committed the state-law tort of **intentional infliction of emotional distress**. Chavez alleges a wrongful termination claim that appears to assert a cause of action for retaliation. [FN1]

> FN1. Worrill-Campbell misconstrues this as a claim for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. See D. Mot. Dis. at 2.

McDonald's hired Chavez as a marketing supervisor in 1997. It terminated his employment in 1998 based on violations of company policy and work rules. Chavez contends that Worrill-Campbell mistreated him and excluded from ethnic marketing seminars, and that McDonald's wrongfully discharged him because he is Hispanic, and that he was retaliated against, in violation of the TCHRA, for visiting the office of the Equal Employment Opportunity Commission, seeking legal advice, attempting to file a discrimination claim, and availing himself of his legal rights. Chavez also alleges that defendants committed the tort of **intentional infliction** of **emotional distress.**

Defendant Worrill-Campbell moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), contending that she is not an employer whom Chavez can hold liable under the TCHRA, and that Chavez has failed to state an **intentional infliction** of **emotional distress** claim on which relief can be granted because the conduct of which Chavez complains was not extreme and outrageous. Chavez moves to **remand** this case to state court. Defendants oppose the **motion**, contending that Chavez is asserting a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and that Chavez **fraudulently** joined Worrill-Campbell to defeat diversity of citizenship.

II

Plaintiff's well-pleaded complaint governs the federal question jurisdictional determination. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). If, on its face, plaintiff's state court petition contains no issue of federal law, there is no federal question jurisdiction. *Cedillo v. Valcar Enters. & Darling Del. Co.,* 773 F.Supp. 932, 934 (N.D.Tex.1991) (Fitzwater, J.) (quoting *Aaron v. National Union Fire Ins. Co.,* 876 F.2d 1157, 1160-61 (5th Cir.1989)). As the master of his complaint, Chavez may avoid a federal question by exclusive reliance on state law. *Caterpillar,* 482 U.S. at 392. A federal claim does not exist simply because facts are available in the complaint to suggest such a claim. *See Gemcraft Homes, Inc. v. Sumurdy,* 688 F.Supp. 289, 292 (E.D.Tex.1988).

*2 The court holds that Chavez has not alleged a Title VII claim. Although he refers at one point to exhausting his administrative remedies under Title VII, *see* Pet. ¶ 5. he otherwise clearly alleges that his claims are based on the TCHRA or Texas common law. In the absence of a federal question claim, the court must decide whether it has diversity jurisdiction.

1999 WL 814527 Page 11
(Cite as: 1999 WL 814527, *2 (N.D.Tex.))

III

Defendant Worrill-Campbell is a Texas citizen. To demonstrate that this court has diversity jurisdiction, defendants must establish that Chavez fraudulently joined her as a defendant. The burden of proving fraudulent joinder is on defendants.

The removing parties carry a heavy burden when attempting to prove fraudulent joinder. *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir.1995). "The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* (quoting *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983)). This circuit has clearly established the standard for determining fraudulent joinder: "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned." *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990).

Defendants maintain that Chavez cannot hold Worrill-Campbell liable individually pursuant to the TCHRA because she is not an employer under the Act. The TCHRA defines an employer as:
  (A) a person who is engaged in an industry affecting commerce and who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year;
  (B) an agent or person described by paragraph (A).

Tex. Lab.Code Ann. § 21.002 (West 1996). Texas courts have held that only employers, not individual supervisors, may be held liable under the TCHRA. *City of Austin v. Gifford,* 824 S.W.2d 735, 742 (Tex.App.1992, no writ); *Miller v. Gigito Dist. Co., Inc.,* 899 F.Supp. 318, 319 (E.D.Tex.1995). In *Gifford* the Texas court of appeals stated:
  The Act does not create a cause of action against supervisors or individual employees. The purpose of the Human Rights Act is to execute the policies of Title VII; we note a long line of federal cases which hold that Title VII creates a cause of action against employers, but not against supervisors or public officials in their individual capacities.

*Gifford,* 824 S.W.2d at 742 (citations omitted).

Texas state courts have consistently construed the TCHRA consistently with federal precedent. *Dallas Firefighters Ass'n v. City of Dallas,* 885 F.Supp. 915, 927 (N.D.Tex.1995) (Kendall, J.); *Thompson v. City of Arlington,* 838 F.Supp. 1137, 1153 (N.D.Tex.1993) (McBryde, J.). Title VII's proscriptions against discrimination apply only to employers. *See* 42 U.S.C. § 2000e-2(a)(2) (stating that it is "an unlawful employment practice for an *employer*" to discriminate against its employees) (emphasis added)). An individual employee is considered an "employer" only if she is an agent of the employer. 42 U.S.C. § 2000e(b). An employee, such as a supervisor, is an agent of the employer if she wields the employer's traditional rights, such as hiring and firing. *Huckabay v. Moore,* 142 F.3d 233, 241 (5th Cir.1998). The employee exercises these rights and becomes an agent of the employer for purposes of Title VII liability, however, only when she acts in her official capacity. *Id.* Thus a recovery under Title VII for a supervisor's actions must be against the supervisor in her official capacity rather than her individual capacity. *Id.; Harvey v. Blake,* 913 F.2d 226, 227-28 (5th Cir.1990).

*3 Although there are circumstances in which a supervisor may be liable under the TCHRA as an agent of an employer, Chavez does not argue that such an agency relationship exists here. Chavez concedes that "[o]nly the third (3) cause of action, intentional infliction of emotional distress ... imposes personal liability on the Defendant, Worrill-Campbell." P. Br. at 2. Accordingly, the court dismisses Chavez's TCHRA claim (and retaliation claim) against Worrill-Campbell.

IV

Worrill-Campbell also moves to dismiss Chavez's claim against her for **intentional infliction of emotional distress.**

To recover on a such claim, Chavez must establish that (1) Worrill-Campbell acted **intentionally** or recklessly, (2) her conduct was extreme and outrageous, (3) her actions caused Chavez **emotional distress**, and (4) the **emotional distress** was severe. *See Twyman v. Twyman,* 855 S.W.2d 619, 621-22 (Tex.1993); *see also Stults v. Conoco,* 76 F.3d 651, 658 (5th Cir.1996). Extreme and outrageous conduct is that which is so extreme in degree, or so outrageous in character, as to go beyond all bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community. *Wornick Co. v. Casas,* 856

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1999 WL 814527  
(Cite as: 1999 WL 814527, *3 (N.D.Tex.))

Page 12

S.W.2d 732, 734 (Tex.1993); *see also Stults,* 76 F.3d at 658.

It is for the court to decide, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *McKethan v. Texas Farm Bureau,* 996 F.2d 734, 742 (5th Cir.1993) (quoting *Wornick Co.,* 856 S.W.2d at 734). "The essential ingredient of extreme and outrageous conduct required for such a claim has been narrowly construed in the employment context." *Pilorcik v. Silicon Sys., Inc.,* No. 3:91-CV-1935-D, slip. op. at 7 (N.D.Tex. Apr. 21, 1993) (Fitzwater, J.) (citing *Best v. GTE Directories Serv. Corp.,* No. 3:92-CV-0163-D, slip op. at 3 (N.D.Tex. Mar. 19, 1993) (Fitzwater, J.) ("Establishing 'extreme and outrageous' conduct in the employment context is very difficult.")). Under Fifth Circuit jurisprudence, an employer's deplorable conduct does not constitute "extreme and outrageous" conduct "except in the most unusual cases." *Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 654 (5th Cir.1994); *see also Battee v. Eckerd Drugs, Inc.,* 1997 WL 340941, at *9 (N.D. Tex. June 12, 1997) (Buchmeyer, C. J.).

Chavez has not alleged facts that, if proved, would establish that Worrill-Campbell committed **intentional infliction** of **emotional distress**. Chavez complains that defendants **intentionally inflicted emotional distress** upon him "by the omission of remedial acts by Defendants, by the lack of counseling for Plaintiff, by their conspiracy to prevent Plaintiff and other Hispanics from meaningful participation in their job duties, and by wrongful[ly] discharging Plaintiff from employment." Pet. ¶ 30. He incorporates in support of this allegation the facts alleged in the prior 29 paragraphs of his state-court petition. In these paragraphs he alleges that defendants systematically excluded him from ethnic marketing seminars, that Worrill-Campbell treated him in an unprofessional and disrespectful manner, and that she accused him of promoting a "Hispanic Agenda" and not being a "team player."

*4 It is well settled that "[a]n employer's conduct, even if a Title VII violation, rises to the level of 'extreme and outrageous' in 'only the most unusual cases."' *Hirras v. National R.R. Passenger Corp.,* 95 F.3d 396, 400 (5th Cir.1996) (per curiam) (citing *Prunty,* 16 F.3d at 654). [FN2] The conduct of which Chavez complains is simply not that which goes beyond all bounds of decency, would be regarded as atrocious, and is utterly intolerable in a civilized community.

> FN2. Although Chavez does not assert a Title VII claim, the TCHRA covers similar, if not identical, conduct.

This court has held that such a claim can be dismissed on a Rule 12(b)(6) **motion**. *Hagen v. BeautiControl Cosmetics, Inc.,* 1998 WL 355479, at *3 (N.D. Tex. June 30, 1998) (Fitzwater, J.). Accordingly, Chavez's claim against Worrill-Campbell for **intentional infliction** of **emotional distress** is dismissed.

V

There is no basis on which Chavez can recover against Worrill-Campbell under state law. Her August 6, 1999 **motion** to dismiss is granted. Worrill-Campbell's citizenship can be disregarded for purposes of removal. There is complete diversity between Chavez and McDonald's, the properly joined defendant. Chavez's August 26, 1999 **motion** to **remand** is therefore denied. The court has today filed a Rule 54(b) final judgment dismissing this case against defendant Worrill-Campbell individually.

SO ORDERED.

1999 WL 814527, 1999 WL 814527 (N.D.Tex.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works