IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 0 8 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| LINDA MARIE PRATHER, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | C.A. No. B-03-0136 |
| | § | |
| UTILIQUEST, L.L.C., MELANIE | § | |
| MCGINNESS AND SUE OBREGON, | § | |
| | § | |
| DEFENDANTS. | § | |

## SUE OBREGON AND MELANIE MCGINNESS' MOTION FOR SUMMARY JUDGMENT

Defendants Sue Obregon and Melanie McGinness file this Motion for Summary Judgment under FED. R. CIV. P. 56.

I

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

The plaintiff filed her Original Petition ("Petition") in the 103rd Judicial District, Cameron County, Texas, on June 30, 2003 against UtiliQuest, Melanie McGinness and Sue Obregon asserting the following claims for relief: (1) national origin discrimination by UtiliQuest in violation of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. §§ 21.001-21.556 (Vernon Supp. 2000); (2) gender discrimination by UtiliQuest in violation of the TCHRA; (3) retaliation by UtiliQuest in violation of the TCHRA; (4) negligent supervision, retention and misrepresentation by UtiliQuest; and (5) intentional infliction of emotional distress by UtiliQuest, McGinness and Obregon.[1] (Petition, *generally*). On August 1,

---

[1] The Court has requested additional briefing regarding the plaintiff's claims of discrimination, retaliation and negligent supervision, retention and misrepresentation. It is the defendants' understanding that the only claim asserted against Obregon and McGinness individually is the intentional infliction of emotional distress claim. (*See* Plaintiff's Original Petition at ¶¶ 18, 19). Further, Plaintiff's Motion to Remand relies only upon her intentional infliction claim against Obregon. (Plaintiff's Motion to Remand, *generally*). This pleading is designed to comply with the Court's order requesting additional briefing, as

2003, UtiliQuest removed the case on grounds of diversity and fraudulent joinder. On or about

August 18, 2003, the plaintiff filed her Motion to Remand. Defendants Obregon and McGinness

now seek summary judgment of all claims asserted against them.

II

STATEMENT OF THE ISSUE AND STANDARD OF REVIEW

Whether the Plaintiff's Claims Against Obregon and McGinness
Should Be Dismissed As a Matter of Law.

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986);

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Duffy v.*

*Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995). In determining whether there are issues

of fact requiring a trial, "the inferences to be drawn from the underlying facts . . . must be viewed

in the light most favorable to the party opposing the motion." *Matsushita*, 106 S. Ct. at 1356

(quoting *United States v. Diebold, Inc.*, 82 S. Ct. 993, 994 (1962)). An issue is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See*

*Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). A fact is "material" if it might

affect the outcome of the suit under the governing substantive law. *See id.*

The moving party has the initial burden of showing that there is no genuine issue of

material fact. *Celotex*, 106 S. Ct. at 2552. Summary judgment must be entered if the nonmoving

party fails to provide sufficient evidence on an essential element to that party's case on which

that party will bear the burden of proof at trial. *See id.* The nonmoving party must present more

---

well as to provide a procedural mechanism allowing for dismissal of the claims against the individual
defendants.

than a mere scintilla of evidence and "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 106 S. Ct. at 2510, 2512 (internal citation omitted). A party may not defeat a motion for summary judgment by relying on hearsay, conclusions, unsubstantiated assertions, conjecture or subjective beliefs. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 959 (5th Cir. 1993); *Little v. Republic Refining Co.*, 924 F.2d 93, 94 (5th Cir. 1991).

III
SUMMARY OF THE ARGUMENT

1.      The behavior attributed to Obregon and McGinness falls woefully short of rising to the level of intentional infliction of emotional distress as a matter of law. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221 (5th Cir. 1995).

2.      Obregon's and McGinness' alleged conduct was not extreme and outrageous as a matter of law. *Ugalde v. W. A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993).

3.      The TCHRA does not provide a cause of action against individuals for discrimination or retaliation. *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 686 (5th Cir. 2001).

4.      Plaintiff's claims of negligent supervision, retention and misrepresentation is necessarily asserted against UtiliQuest, not Obregon and McGinness, the employees it has allegedly negligently supervised and retained. *Castillo v. Gared, Inc.*, 1 S.W.3d 781, 786 (Tex. App.—Houston [1st. Dist] 1999, pet. denied).

5.      Plaintiff's claims of negligent supervision and retention should be dismissed because the plaintiff has not suffered or alleged physical harm as a result of the defendants' alleged breach of duty. *Sibley v. Kaiser Foundation Health Plan of Texas*, 998 S.W.2d 399, 403 (Tex. App.—Texarkana 1999, no writ).

3

6.    The plaintiff's claims of negligent supervision, retention and misrepresentation are barred by the exclusivity provision of the Texas Workers' Compensation Act.  *Walls Regional Hospital v. Bomar*, 9 S.W.3d 805, 806 (Tex. 1999).

IV
ARGUMENT AND AUTHORITY

A.    The Plaintiff's Complaints With Regard to Her Employment Do Not Give Rise to a Claim of Intentional Infliction of Emotional Distress.

The plaintiff, a former dispatcher for UtiliQuest's Harlingen office, alleges that Obregon, the office administrator, and McGinness, the company's human resources/benefits coordinator based in Atlanta, intentionally inflicted emotional distress upon her when she was terminated after taking short-term disability leave in connection with her pregnancy in June 2002.  (Petition at ¶¶ 11 and 19).  The plaintiff claims that she was fired because she was pregnant.  (Id.)  Obregon and McGinness, however, testify that the plaintiff was administratively terminated per company policy based upon her taking short-term disability leave, and not being eligible for leave under the Family and Medical Leave Act ("FMLA").  (Obregon declaration at ¶¶ 3-6; McGinness declaration at ¶¶ 3-5).  As support for her intentional infliction claim against Obregon and McGinness, the plaintiff's Petition offers no independent factual background or explanation giving rise to such a claim.  (Petition at ¶ 19).  Accordingly, Obregon and McGinness will assume for purposes of this Motion that the plaintiff bases her skeletally-pleaded intentional infliction claim upon the same allegation as her wrongful termination claim—that she was terminated based upon her national origin and pregnancy.

In order to prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove, among other things, that Obregon and McGinness engaged in extreme and outrageous conduct.  *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993).  Texas courts have found liability for "extreme and outrageous" behavior only where the "conduct has been so

4

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Horton v. Montgomery Ward & Co.*, 827 S.W.2d 361, 369 (Tex. App.—San Antonio 1992, writ denied). Whether the conduct alleged by the plaintiff here may reasonably be regarded as extreme and outrageous is a question of law to be decided by the Court. *Wornick v. Casas,* 856 S.W.2d 732, 734 (Tex. 1993).

First, mere employment disputes do not support a claim for intentional infliction. *Miller v. Galveston/Houston Diocese*, 911 S.W.2d 897, 899 (Tex. App.—Amarillo 1995, no writ); *see also Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994); *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33-34 (5th Cir. 1992); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991). Here, the plaintiff's intentional infliction claim is clearly based only upon her belief that she was not treated fairly by Obregon and McGinness.

Second, termination in and of itself does not constitute outrageous conduct as a matter of law. *Farrington v. Sysco Food Services, Inc.*, 865 S.W.2d 247, 254 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Johnson*, 965 F.2d at 34 (an employer is not liable for exercising its legal right to terminate an employee, even if the employer recognizes that the employee will suffer emotional distress as a result of the termination). In *Burden v. General Dynamics Corp.*, 60 F.3d 213 (5th Cir. 1995), the Court found fraudulent joinder and denied the plaintiff's motion to remand with respect to his claim of intentional infliction against his supervisor. *Id.* at 218. The Court held that the plaintiff's allegations did not "c[o]me close to the level of outrageousness needed to succeed on a Texas claim of intentional infliction of emotional distress," and in so doing cited several Texas cases which supported its decision. *Id.* In each of the cited cases, the determining factor by each Court was the behavior exhibited by the

employer. *Id.*; *Nayef v. Arabian American Oil Co.*, 895 S.W.2d 825, 828 (Tex. App.—Corpus Christi 1995, n.w.h.) (not extreme and outrageous conduct for employer to take personnel action adverse to employee); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (not extreme and outrageous conduct for an employer to question an employee's actions using a "severe and curt" tone); *Sebesta v. Kent Electronics Corp.*, 886 S.W.2d 459, 463-64 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (not extreme and outrageous conduct for employer to fire employee and arrange for an "exit parade" during the busiest part of the workday). Here, the plaintiff's Petition is silent with regard to any allegations of the manner in which she was treated by Obregon or McGinness—rather, she alleges only that she was administratively terminated. (*See* Petition at ¶ 11).

> B.    There is No Evidence of Extreme and Outrageous Conduct.

Third, and finally, even if the plaintiff's allegation that she was terminated based upon her national origin or pregnancy is true (which it is not), it is well-settled that wrongful termination in violation of anti-discrimination statutes, in the absence of extreme and outrageous conduct, does not give rise to an intentional infliction claim. *Ugalde v. W. A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991) (age discrimination). Notably, in *Dean v. Ford Motor Credit Co.*, 885 F.2d 300 (5th Cir. 1989), the Court found that, although there was direct evidence of gender discrimination, the employer's conduct "would not have been outrageous" but for a supervisor who intentionally placed company checks in the plaintiff's purse to make it appear as though she were stealing. *Id.* at 304-07. Here, there is no such evidence, because none exists, of any outrageous behavior by Obregon or McGinness.

Obregon, for example, testifies that, far from engaging in any outrageous behavior with respect to the plaintiff's termination, she made inquiry to the company's human resources

department regarding whether the plaintiff would be eligible for short-term disability benefits despite her failure to enroll in the company's health and long-term disability benefit program. (Obregon declaration at ¶ 3). Further, upon the plaintiff's administrative termination in June 2002, Obregon ensured that the plaintiff would be "eligible for re-hire" upon her reapplication for employment, and then encouraged the plaintiff to return in December to fill a vacancy, an invitation that the plaintiff declined. (Obregon declaration at ¶¶ 4, 5). Similarly, McGinness, based in Atlanta, testifies that she has never met or spoken to the plaintiff. (McGinness declaration at ¶ 5). Her only role in the termination was to confirm that the plaintiff was not eligible for FMLA leave, and to provide the plaintiff with notice of her rights and obligations under the company's short-term leave policy. (McGinness declaration at ¶¶ 3-5). Neither Obregon or McGinness behaved outrageously with respect to the plaintiff's termination—indeed, their only role was to do their jobs by applying the company's short-term disability policy and by keeping the plaintiff informed regarding the effects of that policy.

It follows, then, that the plaintiff's allegations of intentional infliction of emotional distress against Obregon and McGinness do not rise to the level required to sustain a claim of intentional infliction of emotional distress as a matter of law, and the plaintiff's claim against these defendants should be dismissed under FED. R. CIV. P. 56.

C.    Individuals Cannot Be Sued for Discrimination or Retaliation Under the TCHRA.

To the extent that the plaintiff's Petition also asserts a claim for relief for discrimination or retaliation against Obregon and McGinness individually, both Texas courts and the Fifth Circuit have conclusively held that the TCHRA does not provide for individual liability by supervisors and managers. *See, e.g., DeMoranville v. Specialty Retailers, Inc.*, 909 S.W.2d 90, 94 (Tex. App.—Houston [14th Dist.] 1995), rev'd on other grounds, 933 S.W.2d 940 (Tex. 1996) (supervisors and managers cannot be sued under TCHRA for their alleged acts of

discrimination); *Jenkins v. Guardian Industries Corp.*, 16 S.W.3d 431, 439 (Tex. App.—Waco 2000, no pet.) (individual supervisor cannot be liable for discrimination); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 686 (5th Cir. 2001) (supervisory or managerial employees are not "employers" as defined by TCHRA).   Since Obregon and McGinness are merely company employees, and not the "employer" as defined by the TCHRA, they cannot be held liable for discrimination or retaliation, and those claims against Obregon and McGinness must be dismissed.

      D.      The Plaintiff's Negligent Supervision, Retention and Misrepresentation Claims Against Obregon and McGinness Should Be Dismissed as a Matter of Law.

To the extent that the plaintiff's claims of negligent supervision, retention and misrepresentation have been asserted against the individual defendants, those claims should be dismissed as a matter of law.  First, the plaintiff's negligent supervision and retention claims necessarily apply only to UtiliQuest, the employer who both supervised and retained the employees (Obregon and McGinness) who are alleged to have discriminated against the plaintiff. As opposed to a claim alleging an employer's vicarious liability for an employee's actions under a *respondeat superior* theory, liability for negligent hiring or retention is founded on the employer's own negligence in hiring or retaining an incompetent servant who the employer knows, or should have known, was incompetent or unfit.  *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 789 (Tex. App.—El Paso 1996, writ denied).  It follows then, that the duty to hire and retain employees in an appropriate fashion belongs to the employer, not the employee. *Castillo v. Gared, Inc.*, 1 S.W.3d 781, 786 (Tex. App.—Houston [1st. Dist] 1999, pet. denied). Accordingly, the plaintiff's claim here must be asserted only against the employer, UtiliQuest, and cannot apply directly to an employee.

Second, even if the Court should apply the plaintiff's negligence claims directly to the individual defendants, those claims must be dismissed as a matter of law. At least one Texas court has determined that a claim for "negligent supervision" does not exist under Texas law. *Castillo*, 1 S.W.3d at 785. The United States District Court for the Northern District of Texas adopted that view in *In re: Great Southern Life Ins. Co. Sales Practice Litigation*, 192 F.R.D. 212, 222 (N.D. Tex. 2000). Furthermore, an employer's duty to hire, retain and supervise employees who are competent and fit to work extends only to prevent its employees from causing physical harm. *Sibley v. Kaiser Foundation Health Plan of Texas*, 998 S.W.2d 399, 403 (Tex. App.—Texarkana 1999, no writ); *see also Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90, 97-98 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Here, the plaintiff has not alleged, nor can she, that her alleged wrongful termination has caused physical harm.

The plaintiff's negligent misrepresentation claim is also miscast. Negligent misrepresentation applies only to one who "in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions…if he fails to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts § 552(1); *First Interstate Bank v. S.B.F.I., Inc.* 830 S.W.2d 239, 245 (Tex. App.—Dallas 1992, no writ). Further, the claim can only be asserted by one who relied upon the information to her detriment. Restatement (Second) of Torts § 552(2). This tort is typically applied to business professionals such as physicians, insurers and the like, in the context of a commercial transaction. Here, the plaintiff can identify no "transaction" in which she was given false information. The only information provided to the plaintiff by Obregon and McGinness was the fact that she was not eligible for FMLA leave pursuant to the statute itself, that she was

eligible for short-term disability benefits, and that she would be administratively terminated in the event she took leave, for <u>any</u> reason. (Obregon declaration at ¶¶ 3-5; McGinness declaration at ¶¶ 3-5). None of this information was false, and none of it was "relied upon" by the plaintiff to her detriment. It is unclear how the plaintiff could have acted differently regardless of the information given to her by Obregon and McGinness: she was pregnant, required short-term disability leave, and took that leave. Moreover, she was encouraged to return by Obregon, and did not. (Obregon declaration at ¶ 5).

Third and finally, the plaintiff's negligence claims are barred by the exclusivity provisions of the Texas Workers' Compensation Act. *Walls Regional Hospital v. Bomar*, 9 S.W.3d 805, 806 (Tex. 1999).

## V
## CONCLUSION

The plaintiff's allegations are insufficient to support her claims against Obregon and McGinness as a matter of law. Accordingly, Obregon and McGinness respectfully request that judgment be entered and that the plaintiff's claims against them be dismissed under FED. R. CIV. P. 56, that they recover their costs, and for such other and further relief as the Court deems just.

10

Respectfully submitted,

_JBS_

_with permission_

Kerry E. Notestine
State Bar No. 15116950
Fed. I.D. No. 2423
1301 McKinney Street, Suite 1900
Houston, Texas  77010
Tel:  713.951.9400
Fax:  713.951.9212

Attorney-in-Charge for Defendants
UtiliQuest
Melanie McGinness
Sue Obregon

OF COUNSEL:

J. Bradley Spalding
State Bar No. 00786253
Fed. I.D. No. 21169
*and*
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas  77010
Tel:  713.951.9400
Fax:  713.951.9212

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to counsel of record by postage-prepaid, certified mail, return receipt requested, on this the 7th day of October 2003, addressed as follows:

Ruben R. Pena
LAW OFFICES OF RUBEN R. PENA, P.C.
P.O. Box 530160
222 W. Harrison
Harlingen, Texas  78550

J. Bradley Spalding

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA MARIE PRATHER, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | C.A. No. B-03-0136 |
| | § | |
| UTILIQUEST, L.L.C., MELANIE | § | |
| MCGINNESS AND SUE OBREGON, | § | |
| | § | |
| DEFENDANTS. | § | |

## DECLARATION OF SUE OBREGON

1.      "My name is Sue Obregon. I am over the age of twenty-one years and am otherwise competent to testify to the facts set forth in this Declaration. All statements contained in this Declaration are true and correct and are based upon my personal knowledge.

2.      I have been employed by UtiliQuest, LLC (and, as it was previously known, Byers Engineering Company) since 1994. My current title is administrative assistant in the Harlingen office, and I held that position at all times relevant to the facts giving rise to this lawsuit. One of my administrative responsibilities is to coordinate our office's payroll practices with UtiliQuest's human resources department in Atlanta, Georgia.

3.      In late 2001, Dispatcher Linda Prather informed her co-workers, and me, that she was pregnant. Over the following months I became concerned about Ms. Prather because she had not elected to receive health insurance through UtiliQuest's medical benefit plan. On or about March 11, 2002, I met with Ms. Prather to inform her that even though she was not enrolled in the company's benefits plan, she would still be entitled to short-term disability benefits in the event that she would have to take a leave of absence due to her pregnancy. Subsequent to that conversation with Ms. Prather, I telephoned Melanie McGinness, UtiliQuest's

human resources/benefits coordinator in Atlanta to confirm that short-term disability benefits would be available to an employee who takes leave even though that employee had not elected medical coverage (including long-term disability benefits). Ms. McGinness confirmed that the benefits were available and stated that she would inform Ms. Prather of the availability of these benefits.

4.    Ms. Prather did in fact begin her leave on May 15, 2002 under orders from her physician. Under UtiliQuest's leave policy, any employees who require short-term disability leave are administratively terminated at the time leave begins. Once they present evidence that they are medically able to resume their duties, the company will return the employee to his or her position if it was not filled in their absence, or to another vacant position for which they are qualified. On June 10, 2002, I prepared an Employee Separation Form confirming that Ms. Prather had been administratively terminated due to her leave of absence, a true and correct copy of which is attached hereto as Defendants' Exhibit 1. On that form, I noted that Ms. Prather was "Recommended for Rehire."

5.    In June 2002, Ms. Prather personally brought me her short-term disability claim paperwork, in which Ms. Prather's physician stated that she would be able to resume her duties on August 7, 2002. A true and correct copy of this document is attached hereto as Defendants' Exhibit 2. However, Ms. Prather did not contact me to inquire about resuming her employment on August 7, 2002, and did not contact me or anyone else at the company until late September 2002, four months after she had originally taken leave. At that time, Ms. Prather visited me at the office and inquired about returning to work. I informed Ms. Prather that we had filled the dispatcher position but requested that she return in December because we expected a dispatcher

2

to resign at the beginning of January. Ms. Prather never returned, and never called me about the dispatcher position.

6.    Ms. Prather was administratively terminated pursuant to the company's short-term leave policy. My only role in the termination was to forward the information to our human resources department and to fill out the Employee Separation Form (on which I recommended that she be re-hired upon application). Ms. Prather was treated exactly as any other non-pregnant employee would be treated under the policy. I did not intentionally inflict emotional distress upon Ms. Prather.

7.    I declare under penalty of perjury that the foregoing is true and correct."

Executed on September 22, 2003.

SUE OBREGON

# UTILIQUEST

## EMPLOYEE SEPARATION FORM

Employee Number __6680__                    Social Security Number __458 - 51 - 6405__

Employee Name: __Linda Prather__                    Office Code __O__

Occupation: __Dispatcher__          Location __Harlingen, TX__

Current Hire Date: __2/27/01__          Last Day Worked: __5/14/02__

Date of Separation: __5/14/02__  (If Different from Last Day Worked)

Separation Code: __V 39__          (See back of form for codes)

Separation Reason __V 39__  __leave of Absence - Maternity__
(Must Agree to Separation Code)

Violation of Standards of Conduct # _____          (From Employee Handbook)

Separation Circumstances: __RELEASED From DR BED REST__
_____
_____
_____

Witness Name(s) and Title(s)_____
_____

Completed By: Name __Sue Obregon__          Signature: __Sue Obregon__
                    (Please Print Clearly)
Recommended for Rehire          ☑ Yes          ☐ No     (Check One)
                    __Marco A. Castillo__
Center Manager Name: __Marco A. Castillo__          Signature: __Marco Castillo__
                    (Please Print Clearly)
                                        Date: __6-10-02__

PAYROLL/HUMAN RESOURCES DEPARTMENT USE ONLY

| Type of Compensation | Date Paid | Period Covered | Amount Paid |
|---|---|---|---|
| Vacation | | | |
| Severance | | | |
| Personal Leave | | | |

c:\temp\separation form.doc                                        Rev 11/00

 **UNUM.**

## DISABILITY CLAIM (PLEASE HAVE ALL SECTIONS COMPLETED)
Mail to: Unum, Chattanooga Customer Care Center, P.O. Box 12030, Chattanooga, TN 37401-303
Claim Questions: 800.633.7479   Fax To: 423.755.3009

### A. ATTENDING PHYSICIAN'S STATEMENT (PLEASE PRINT)

**1. Name of Patient** Linda Prather   **Date of Birth** 10-30-80   **Social Security Number** 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

**2. Diagnosis** - Please include the primary diagnosis and list any secondary conditions.

**Date of Last Examination** 5/1/02   **Diagnosis** (including any complications) include ICD9 and/or DSM IV Multi Evaluation Nomenclature and Code Number V22.2 Pregnancy

Objective findings (including current x-rays, EKGs, pyschiatric testing, laboratory data and any clinical findings)

**Symptoms** Pregnant @ 33 wk I edema

Is this condition due to ☐ an Accident ☐ a Sickness?   Date symptoms first appeared or accident occurred:

Is the accident or sickness related to the patient's employment? ☐ Yes ☒ No ☐ Unknown

**Date restrictions and limitations began** 5/15/02   Has patient ever been treated for the same or similar condition? ☐ Yes ☒ No  If yes, state when and describe.

### 3. Information About the Patient's Ability to Work - this information is critical to understanding your patient's condition

Has patient been released to work in his/her occupation? ☐ Yes ☒ No  in any occupation? ☐ Yes ☒ No

If the patient has demonstrated a loss of function, please provide restrictions and limitations and the date they began in the space provided below.

Fully describe restrictions and limitations.

**RESTRICTIONS** (What the patient should not do) Bed rest

**LIMITATIONS** (What the patient cannot do)

When should the patient be able to return to work? Full Time: 8/7/02   Part Time:

| Height/Weight | Blood Pressure Last Visit 112/80 | If Pregnancy, Expected Delivery Date 10-26-02 | If Delivered, Actual Delivery Date | Delivery Type ☒ Normal ☐ C-Section |
|---|---|---|---|---|

| Date of first visit for this illness or injury 4/15/01 | Date of next visit 5/16/02 | Date of last visit 5/1/02 | Frequency of visits 11 visits wk |
|---|---|---|---|

Is patient: ☐ Ambulatory ☐ House Confined   ☐ Bed Confined ☐ Hospital Confined   Has patient been admitted to hospital? ☐ Yes ☒ No  Confined From:  To:

If Hospital Confined, give name and address of hospital

Have you completed claim forms regarding this patient for other insurance carriers? ☐ Yes ☒ No  If yes, state date and name of insurance company:

### 4. Names and Addresses of Other Treating Physicians

Referring physician or other treating physicians (names, address, phone #'s):

### REQUIRED ATTACHMENTS AND SIGNATURES
Please make sure that office notes, test results, and discharge summaries are attached. This will help reduce additional requests.
**FRAUD NOTICE:** Any person who knowingly files a statement of claim containing false or misleading information is subject to criminal and civil penalties. This includes Employer and Attending Physician portions of the claim form.
The above statements are true and complete to the best of my knowledge and belief.

| Print or Type Name Henry Benavides | Degree MD | Medical Specialty OB/GYN |
|---|---|---|
| Street Address 2121 Pease St 3D | | Phone Number (956) 428-0600 |
| City Harlingen | State TX | Zip Code 78550 | Fax (956) 412-3352 |
| Signature of Physician | | Date 5/15/02 |
| SSN or Employer's ID Number: 742599965 | | |

1328-98 (12/00)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA MARIE PRATHER, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | C.A. No. B-03-0136 |
| | § | |
| UTILIQUEST, L.L.C., MELANIE | § | |
| MCGINNESS AND SUE OBREGON, | § | |
| | § | |
| DEFENDANTS. | § | |

## DECLARATION OF MELANIE MCGINNESS

1.     "My name is Melanie McGinness. I am over the age of twenty-one years and am otherwise competent to testify to the facts set forth in this Declaration. All statements contained in this Declaration are true and correct and are based upon my personal knowledge.

2.     I have been employed with UtiliQuest, LLC (and, as it was previously known, Byers Engineering Company) since 1986, and currently work out of the Atlanta office. My current title is human resources/benefits coordinator, and I held that position at all times relevant to the facts giving rise to this litigation.

3.     As benefits coordinator, I am one of the individuals responsible for ensuring that UtiliQuest's employees are compensated and provided benefits in accordance with company policy and applicable state and federal laws. Pursuant to company policy, the administrators in each UtiliQuest office around the country are required to contact me in the event that a benefits issue arises with an employee. On or about March 12, 2002, I received a telephone call from Sue Obregon, the office administrator for UtiliQuest's Harlingen office. Ms. Obregon told me that Linda Prather, a dispatcher in her office, had informed her that she was pregnant and would eventually need to take time off work. Ms. Obregon informed me that Ms. Prather had not

elected health benefits or long-term disability benefits, and inquired as to whether she would still be eligible for short-term disability benefits. I confirmed to Ms. Obregon that Ms. Prather would be eligible for short-term disability benefits and informed her I would provide Ms. Prather with the necessary information.

4.      I first determined that, since the Harlingen office did not house at least 50 employees within a 75-mile radius, Ms. Prather was not eligible for leave under the Family and Medical Leave Act ("FMLA"). Since the FMLA did not apply, Ms. Prather would then be eligible for short-term disability benefits upon missing 10 consecutive business days of work. Those benefits are paid for 90 days. However, under the company's leave policy, any employee who takes short-term disability, but who is not otherwise qualified for leave under the FMLA, is administratively terminated effective on the last day worked. An employee who is administratively terminated under this scenario is then free to apply for re-hire in the event that they are released to return to work by their physician and the employee's former position has not been filled. I sent a memorandum to Ms. Prather on March 12, 2002, informing her of her FMLA rights, the circumstances under which she would qualify for short-term disability benefits, and the fact that she would be administratively terminated once she took disability leave, a true and correct copy of which is attached as Defendants' exhibit 3.

5.      Ms. Prather was, in fact, administratively terminated per company policy upon taking leave. Aside from my March 12, 2002 memorandum to Ms. Prather, I do not recall having any communications with her regarding her termination. I have never worked in the Harlingen office, have never met Ms. Prather personally, and do not recall ever speaking to her on the phone. Ms. Prather's pregnancy was irrelevant to her termination. The only reason for her termination was her status on short-term disability leave, and the fact that she did not

otherwise qualify for FMLA leave.  The company's leave policy is applied to all employees, regardless of the medical condition which requires them to take leave.  I did not intend to inflict emotional distress upon Ms. Prather.

6.      I declare under penalty of perjury that the foregoing is true and correct."

Executed on October ⌐7 , 2003.


                                    Melanie McGinness
                                    Melanie McGinness



500 Northridge Road, Suite 300
Atlanta, GA 30350
Phone: (678) 461-3900
Fax: (678) 461-3902

# Memo

**To:**      Linda Prather

**From:**    Melanie McGinness – HR/Benefits Coordinator

**Cc:**      Tony Castillo

**Date:**    3/12/2002

**Re:**      Short Term Disability and Family Medical Leave Act

Linda this is in response to a phone conversation with Sue Obregon  UtiliQuest has a program to help you during this time.

Short Term Disability benefits are available to all full-time employees after they have missed ten consecutive business days of work and cover the employee for up to 90 days of disability.  The maximum benefit is $250 per week before taxes.  Attached please find a UNUM Claim for Disability Benefits Application for Short Term Disability. **Please note that you need to sign the bottom of Page 3 and fill out Page 2 of the application.  Page 1 of the application needs to be filled out by your physician.  Print clearly and use black ink if possible.  Please return the form to me:  UtiliQuest, Attn: Melanie McGinness, 500 Northridge Road, Suite 300, Atlanta, GA 30350.**

Also, attached is a standard notice regarding an employee's rights under the Family and Medical Leave Act of 1993.  In order to qualify for this benefit, an employee must work in an office that has 50 people within a 75 mile radius because of this you are not eligible for FMLA.

Unfortunately, we will not be able to hold your position open for the time that your are out on disability.  You will be administrative terminated as of your last day worked.  This will not affect your disability benefits.  If you desire to return to work at UtiliQuest and there is an open position, you are welcome to reapply.

If you have any questions regarding this Memorandum or the attachments, please do not hesitate to call me at 678-250-2651.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA MARIE PRATHER, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | C.A. No. B-03-0136 |
| | § | |
| UTILIQUEST, L.L.C., MELANIE | § | |
| MCGINNESS AND SUE OBREGON, | § | |
| | § | |
| DEFENDANTS. | § | |

ORDER

COMES NOW TO BE HEARD, Defendants Sue Obregon and Melanie McGinnis' Motion for Summary Judgment. The Court, having read the pleadings, reviewed the evidence and considered applicable case law, is of the opinion that the Motion is meritorious and should be GRANTED. Accordingly, the Court ORDERS as follows:

Defendants Sue Obregon and Melanie McGinnis' Motion for Summary Judgment is GRANTED. The Court further ORDERS that Plaintiff's claims against Ms. Obregon and Ms. McGinness are DISMISSED with prejudice.

Signed this ___ day of _____, 2003.

_____
UNITED STATES DISTRICT JUDGE