25

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

MAR 2 2 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| LINDA MARIE PRATHER, | § | |
| | § | |
| | § | CIVIL ACTION NO. B-03-136 |
| V. | § | |
| | § | |
| UTILIQUEST, L.L.C., MELANIE | § | |
| MCGINNESS AND SUE OBREGON | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT UTILIQUEST'S
MOTION FOR SUMMARY JUDGMENT AND
OBJECTIONS TO AFFIDAVITS OF OBREGON AND McGINNESS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, LINDA MARIE PRATHER, and files this her response to the

Defendant UTILIQUEST's Motion for Summary Judgment and her Objections to the Affidavits of

Obregon and McGinness and would respectfully show the Court as follows:

I.

**BACKGROUND OF THE CASE**

Plaintiff filed her original action in state district court on June 30, 2003 alleging violation of

the Texas Commission for Human Rights Act (TEX. LAB. CODE §21.051 et. seq.)as well as state

causes of action.   On or about August 6, 2003, Defendants Utiliquest and McGuinness removed the

action to federal court.  On or about August 19, 2003, the Plaintiff filed her motion to remand and

Defendant Utiliquest responded.   On March 5, 2004, Utiliquest filed its Motion for Summary

Judgment.

Prather\Respns.Sum

## II.
## SUMMARY JUDGMENT STANDARD

In general, summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 91 L.Ed. 2d 202, 106 S.Ct. 2505 (1986). The moving party must identify the evidence on file in the case which establishes the absence of any genuine issue of material fact. *Celotex,* 477 U.S. at 323.

Once a moving party has made an initial showing, the party opposing the motion must offer evidence sufficient to demonstrate the existence of the required elements of the party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 586, 89 L.Ed.2d 538, 106 S.Ct. 1348 (1986). All evidence and the inferences to be drawn therefrom "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.* 369 U.S. 654,655, 8 L.Ed. 2d 176, 82 S.Ct. 993 (1962); *Marshall v. Victoria Transp. Co.,* 603 F.2d 1122,1123 (5th Cir. 1979).

## III.

## LEGAL STANDARD UNDER TITLE VII

The framework for analyzing employment discrimination claims under Title VII and, by extension, the PDA, was originally set out by the Supreme Court in *McDonnell Douglas Corp.*

*v. Green,* 411 U.S. 792, 802-04, 36 L.Ed.2d 668, 93 S.Ct. 1817 (1973).[1]  Title VII of the Civil

Rights Act of 1964 makes it "an unlawful employment practice for an employer ...to discriminate

against any individual with respect to [her] compensation, terms, conditions, or privileges of

employment because of such individual's ...sex." 42 U.S.C. § 2000e-2(a)(1).  In 1978, Congress

amended Title VII by enacting the Pregnancy Discrimination Act ( the "PDA"), which provides that:

> the terms "because of sex" or "on the basis of sex" include, but
> are not limited to, because of or on the basis of pregnancy,
> childbirth or related medical conditions; and women affected by
> pregnancy, childbirth or related medical conditions shall be treated
> the same for all employment-related purposes, including receipt of
> benefits under fringe benefit programs, as other persons not so affected
> but similar in their ability or inability to work.....

42 U.S.C. § 2000e(k).

The U.S. Supreme Court in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 125 L.Ed. 2d

407, 113 S.Ct. 2742 (1993) elaborated on the *McDonnell Douglas* test.  Under the *McDonnell

Douglas/St. Mary's Honor* scheme, Prather must first establish a prima facie case of discrimination.

*St. Mary's* 509 U.S. at 506.  Such a prima facie case is established if Prather provides evidence that

she: (i) was a member of a protected group; (ii) was qualified for the position; (iii) was dismissed

or suffered an adverse employment action; and (iv) was replaced by someone outside of the protected

class.  *See e.g. Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990).

If Prather successfully establishes a prima facie case, she has raised a rebuttable presumption

of discrimination and shifted the burden to Utiliquest  to articulate a legitimate, nondiscriminatory

---

[1]*The Texas Labor Code §21.001 provides as follows:*
*"The general purposes of this chapter are to :*
*(1) provide the execution of the polices of Title VII of the Civil Rights act of 1964*
*and its subsequent amendments (42 U.S.C. Section 200e et seq.)"*

Prather\Respns.Sum

reason for the termination. *St. Mary's* 509 U.S. at 506. If Utiliquest satisfies this burden of production, Prather must then present evidence that Utiliquest's proffered reason is actually a pretext for discrimination and that her termination was in fact informed by discriminatory motives. *Id. at 507; Texas Dept of Community Affairs v. Burdine,* 450 U.S. 248, 252-55, 67 L.Ed2d 207, 101 S.Ct. 1089 (1981). Prather may then avoid summary judgment if the evidence, taken as a whole, (1) creates a fact issue as to whether each of Utiliquest's stated reasons was what actually motived the termination, and (2) creates a reasonable inference that her gender and pregnancy were determinative factors in the firing. *See e.g. Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir. 1996)(en banc). The ultimate burden of persuasion at trial, of course, rests squarely upon Prather. *St. Mary's* , 509 U.S. at 508; *Marcantel v. Louisiana Dep't of Transp. & Dev.* 37 F.3d 197, 200 (5th Cir. 1994).

## IV.

## APPLICATION OF THE LAW TO THE FACTS

### A. PRATHER'S PRIMA FACIE CASE UNDER TITLE VII (PDA)

As noted above, for Prather's Title VII/Tex. Labor Code pregnancy discrimination claims to survive, she must articulate a prima facie case by showing that she: (i) belongs to a protected class; (ii) was qualified for the job; (iii) was fired; and (iv) was replaced by someone outside of the protected class. Utiliquest focuses on the last element of the *McDonnell Douglas* test. [2] Plaintiff must bring forth evidence that she was replaced by someone outside the protected class. Attached as Exhibit 7 is the declaration of Linda Prather, which states that her employer replaced her with

---

[2] The Supreme Court stated that "the specification . . . of the prima facie proof required [in *McDonnell Douglas*] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S. Ct. at 1824 n. 13; *see Vaughn v. Edel,* 918 F.2d 517,521 (5th Cir. 1990)

someone who was not pregnant. As a result, Plaintiff has presented evidence to establish her prima facie case.

### 1. Other "administratively terminated employees"

UtiliQuest further argues that Defendant should prevail on summary judgment because other employees, not within the protected category, were also "administratively terminated". However, the Defendants have failed to produce such information as could be readily contradicted, other than the bald assertions of the co-defendant McGinness. Neither in its initial disclosures nor in request for production have documents been produced even though they were requested.. However, Defendants failed to produce documents related to treatment of other employees who were not in a suspect class.

### 2. Failure to supplement

Plaintiff also propounded discovery on the Defendants which were answered on January 14, 2004. Plaintiff made two requests for production documents dealing with other employees terminated. The Defendant in response to Requests for Production Nos. 5 and 40 objected, however subject to the objection stated:

> "Subject to and without waiving the foregoing objections, Defendant responds as follows, limited to documents which reflect the administrative termination of any employees in the Harlingen office who took a leave of absence since January 1, 1999. :
> Defendant will supplement any responsive documents. (Exhibit 1)

Defendant has never supplemented with any other documents regarding other employees purportedly "administratively terminated" .

### B. PRETEXT

Should the court deny Plaintiff request to strike the Defendant's motion for summary judgment, then the Plaintiff will show that the "administrative termination" was used as a pretext

Prather\Respns.Sum

to terminate her.

### 1. Obregon declaration and deposition testimony-what is administrative termination

Defendant UtiliQuest cannot point to any place in its polices that defines what "administrative termination" means. When questioned as to the definition of "administrative termination" Sulema Obregon the administrative assistant in the UtiliQuest Harlingen office testified as follows:

> Q: Can you tell me what the difference between an administrative termination and a plain, regular termination is?
> A: I'm not sure.
> Q: Okay. There's nothing in the employee handbook that defines administrative termination as opposed to termination, correct?
> A: Correct. (Pg. 27 ln 15-22)

Obregon further testified it was her understanding that a person who was pregnant would be entitled to 12 weeks off, if it was requested. (Obregon deposition pg. 12-13)(Exhibit 2)

Obregon's declaration is even more telling. On paragraph 4, Obregon has sworn under penalty of perjury that: "Under UtiliQuest's leave policy, any employees who require short-term disability leave are administratively terminated at the time leave begins. Once they present evidence that they are medically able to resume their duties, the company will return the employee to his or her position if it was not filled in their absence, or to another vacant position for which they are qualified." (Exhibit 3-Obregon declaration) This contradicts Utiliquest's position that Prather was required to fill out another application. Further, Obregon testified in her declaration in paragraph 6 that "Ms. Prather was administratively terminated pursuant to the company's short-term leave policy." However, Utiliquest now states that it terminated her because Plaintiff exceed her "vacation and personal/sick days". Again, Utiliquest contradicts its position because it argues that Prather had already "significantly exceeded her personal/sick days when she took short-term disability in 2002."

Prather\Respns.Sum

(See pg. 16 of UtiliQuest's Motion for Summary Judgment). The failure by UtiliQuest to enforce it's absence policy constitutes a waiver of such a policy. *Goodyear Tire & Rubber Co. v. Portilla,* 879 S.W.2d 47 (Tex. 1994).

### 2. McGinness declaration/deposition

A review of McGinness declaration reveals additional inconsistencies in the UtiliQuest's position. McGinness notes that any employee who takes "short-term disability and who is not otherwise qualified for leave under the FMLA, is administratively terminated effective on the last day worked." (Exhibit 4-McGinness declaration, paragraph 4) However, there is no such policy in the UtiliQuest employee handbook and the defendant has not pointed to one. (Exhibit 5-Leave of Absence Policy). McGinness declaration in paragraph 5 states that "[t]he only reason for her termination was her status on short-term disability leave, and the fact that she did not otherwise qualify for FMLA leave." However, Prather has stated in both her deposition and in her attached affidavit that she was never given short-term disability leave. In fact, a review of UtiliQuest's Leave of Absence Policy does not contain short-term disability leave, but is located in a separate paragraph and relates to insurance and not leave.(Exhibit 6) There is no short term disability leave only short-term disability insurance. This seemingly minor "mistake" indicates that even the "human resources/benefit coordinator" was unable to correctly define short term disability or was coached to prepare this erroneous declaration.

### 3. Non-Discriminatory Reason

UtiliQuest next argues that even if Prather can establish a prima facie case she nevertheless is barred from making her claim because UtiliQuest had a "legitimate non-discriminatory reason" for the termination. As evidence of its non-discriminatory intent, UtiliQuest contends that Prather

was "administratively terminated" due to its neutral based absence policy. Defendant argues that "[i]t is only when the leave exceeds the employee's allotted vacation and personal/sick days that the employer's legitimate business needs with respect to the efficient operation of its business with a full compliment of employees require that it administratively terminate an employee who will be absent for an excessive period of time." (Pg. 16 of UtiliQuest Motion for Summary Judgment) Without defining what an excessive period of time means UtiliQuest has placed its proverbial eggs in one basket. UtiliQuest's Leave of Absence Policy (Exhibit 5) notes that there are in fact four types of leave. The very first one is called "Personal Leave of Absence" and requires only that the individual be employed as a full time employee and for at least a year before being eligible. The leave is for 30 days but may be extended. Linda Prather was thus qualified for this leave. (Exhibit 7) UtiliQuest and its human resource coordinator seem to ignore this policy and rely on an unwritten and unproduced policy. Sulema Obregon, however, initially believed that Prather could qualify for a 30 day leave. (Exhibit 8- e-mail by Obregon and McGinness) A jury could, given all this information deem that the termination of Linda Prather was due to her pregnancy and that the proffered reason was a pretext for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S.Ct. 2097 (2000). UtiliQuest's various versions of its policy, its applicability to the plaintiff and the sequence of events culminating with the termination of the plaintiff due to her pregnancy are all contested questions of fact more properly left for a jury to consider. Given such circumstance, UtiliQuest cannot be said to have demonstrated a legitimate, non-discriminatory reason for Prather's termination and Summary Judgment should be denied.

Prather\Respns.Sum

## V.

## OTHER CAUSES OF ACTION

Plaintiff hereby concedes that she has no claim for national origin and retaliation under

Title VII.  Plaintiff, however, would urge this court to deny the Defendant's Motion for Summary

Judgment on the issue of Intentional Infliction of Emotional Distress in that such evidence has been

adduced above that would permit a jury to make such a finding.

Respectfully submitted,

**LAW OFFICES OF RUBEN R. PEÑA, P.C.**
222 W. Harrison
Harlingen, Texas 78550
Telephone (956) 412-8200
Facsimile (956) 412-8282

By: _____
    **RUBEN R. PEÑA**
    Federal I.D. 1216
    Texas Bar No. 15740900
    ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I, Ruben R. Peña, do hereby certify that a true and correct copy of the foregoing instrument
has been served by certified mail, return receipt requested  in accordance with the Federal  Rules of
Civil Procedure on this the 21st day of March, 2004 upon the following counsel of record:

Kerry E. Notestine
J. Bradley Spalding
Littler Mendelson, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010

_____
**RUBEN R. PEÑA**

Prather\Respns.Sum

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA MARIE PRATHER, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | C.A. NO. B-03-0136 |
| | § | |
| UTILIQUEST, L.L.C., MELANIE | § | |
| MCGINNESS AND SUE OBREGON, | § | |
| | § | |
| DEFENDANTS. | § | |



DEFENDANT, UTILIQUEST, L.L.C.'S RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

TO:   Plaintiff, Linda Marie Prather, by and through her attorney of record, Ruben R. Peña,
      Law Offices of Ruben R. Peña, P.C., P.O. Box 530160, 222 W. Harrison, Harlingen,
      Texas 78550.

      Defendant Utiliquest, L.L.C. makes the following objections and responses to Plaintiff's

First Set of Requests for Production.

Respectfully submitted,

Kerry E Notestine
State Bar No. 15116950
Fed. I.D. No. 2423
1301 McKinney Street, Suite 1900
Houston, Texas  77010
Tel:  713.951.9400
Fax:  713.951.9212

Attorney-in-Charge for Defendants
UtiliQuest
Melanie McGinness
Sue Obregon

## REQUEST FOR PRODUCTION

1.     LINDA MARIE PRATHER's employment file.

RESPONSE:

See attached documents Bates-stamped UtiliQuest 0001-0101.


2.     LINDA MARIE PRATHER'S payroll records, earning records, and outline records from her employment with the Defendant.

RESPONSE:

See attached documents Bates-stamped UtiliQuest 0001-0101.


3.     All records, files, and documents pertaining to employee benefits applicable to LINDA MARIE PRATHER from her employment with the Defendant.

RESPONSE:

See attached documents Bates-stamped UtiliQuest 0001-0101.


4.     All termination letters, exit documents, severance documents, and other such other documents which relate to Plaintiff's discharge/termination with the Defendant.

RESPONSE:

See attached documents Bates-stamped UtiliQuest 0001-0101.


5.     Any and all books, logbooks, compiled notations or other documents of this sort which reflect, the employees who were terminated or disciplined by the **UTILIQUEST, L.L.C.** for violation of inadequate work performance and/or pregnancy policy from 1998 to the present ceased their employment with the **UTILIQUEST, L.L.C.**.   This request is limited to documents created from 1998 until the present.

RESPONSE:

Defendant objects to request no. 5 on the grounds that it is unintelligible, and that it is overly broad in temporal scope, and overly broad with respect to subject matter, and is therefore not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Defendant responds

5

RESPONSE:

Defendant objects to request no. 38 on the grounds that it is overly broad and unduly burdensome, vague and ambiguous, and fails to set forth the items sought with reasonable particularity as required by FED. R. CIV. P. 34.  Subject to and without waiving the foregoing objections, Defendant responds as follows:

See Defendant's responses to requests for production no. 1-4.

39.    All other documents in the possession of Defendant that pertain to this litigation.

RESPONSE:

Defendant objects to request no. 39 on the grounds that it is overly broad and unduly burdensome, vague and ambiguous, and fails to set forth the items sought with reasonable particularity as required by FED. R. CIV. P. 34.

40.    All documents memorializing or in any way recording or reflecting any **UTILIQUEST, L.L.C.** employees who were terminated and the dates of such termination from 1999 to the present.  (For the location at which Plaintiff was employed.)

RESPONSE:

Defendant objects to request no. 40 on the grounds that it is unintelligible, and that it is overly broad in temporal scope, and overly broad with respect to subject matter, and is therefore not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Defendant responds as follows, limited to documents which reflect the administrative termination of any employees in the Harlingen office who took a leave of absence since January 1, 1999:

See Defendant's response to request for production no. 5.

41.    All documents memorializing or in any way recording or reflecting the job description for the position held by the Plaintiff.

RESPONSE:

Defendant objects to request no. 41 on the grounds that it is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing, Defendant responds as follows:

See attached documents Bates-stamped UtiliQuest 0001-0101.

16

**EXHIBIT 2**

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LINDA MARIE PRATHER        X
                            X
                            X
                            X
VS.                      X CASE NO. B-03-0136
                            X
                            X
UTILIQUEST, L.L.C., MELANIE    X
McGINNESS AND SUE OBREGON      X

- - - - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF SULEMA OBREGON
FEBRUARY 12, 2004

- - - - - - - - - - - - - - - - - - - - - - - - - - -

REPORTED BY SHELLEY STINGLEY
CERTIFIED COURT REPORTER

APPEARANCES

ORIGINAL

COUNSEL FOR PLAINTIFF:

    RUBEN R. PENA
    LAW OFFICES OF RUBEN R. PENA
    222 West Harrison
    Harlingen, Texas  78550

COUNSEL FOR DEFENDANTS:

    J. BRADLEY SPALDING
    LITTLER MENDELSON
    1301 McKinney Street, Suite 1900
    Houston, Texas  77010

ALSO PRESENT:  Linda Marie Prather

BRYANT & STINGLEY, INC.
McAllen        Harlingen        Brownsville
(956)618-2366    (956)428-0755    (956)542-1020

09:34  1    Obregon 2.

09:34  2              MR. SPALDING:  Let me take a look at that

09:34  3    first.

09:35  4              You were going to give me the documents

09:35  5    that you were going to produce via initial disclosure

09:35  6    at some point today?

09:35  7              MR. PENA:  Uh-huh.  You don't have that

09:35  8    one?

09:35  9              MR. SPALDING:  No.  This is not anything

09:35 10    that we produced to you and I have never seen it

09:35 11    before.

09:35 12              MR. PENA:  Well, we can get you a copy

09:35 13    today.  Do you want to take a few minutes?

09:35 14              MR. SPALDING:  No, that's fine.  I just

09:35 15    need one minute to look at it.

09:35 16              MR. PENA:  Sure.

09:36 17              MR. SPALDING:  There you go.

09:36 18         Q.  Before I go on to Obregon Exhibit No. 2,

09:36 19    Ms. Obregon, would you tell the members of the jury

09:36 20    what your understanding is, if someone has become

09:36 21    pregnant at UtiliQuest, how much time can they get off

09:36 22    right now?

09:36 23         A.  If they are pregnant?

09:36 24         Q.  Yes.

09:36 25         A.  If they request leave time?

09:36  1    Q.   Yes, ma'am.

09:36  2    A.   My understanding is that it's three months,

09:36  3    twelve weeks.

09:36  4    Q.   Twelve weeks?

09:36  5    A.   Uh-huh.

09:36  6    Q.   Okay.  And is that -- was that true back when

09:36  7    Ms. Prather was working there, as well?

09:36  8    A.   Yes.

09:36  9    Q.   Now, is there somewhere in this Obregon 1 that

09:37 10    tells us that, in the employee handbook?

09:37 11    A.   I'm not sure.  I would have to look at it.

09:37 12    Q.   Do you want to take a quick look at that for

09:37 13    me, please?

09:37 14            MR. SPALDING:  Ma'am, can you read back

09:37 15    the question to which her answer was twelve weeks, or

09:37 16    rather three months I think her answer was.  Can you

09:37 17    read the question back?

      18            THE REPORTER:  Question, "Before I go on

      19    to Obregon Exhibit No. 2, Ms. Obregon, would you tell

      20    the members of the jury what your understanding is, if

      21    someone has become pregnant at UtiliQuest, how much

      22    time can they get off right now?"

      23            Answer, "If they are pregnant?"

      24            Question, "Yes."

      25            Answer, "If they request leave time?"

**EXHIBIT 3**

09-18-2003  02:56pm  From-                                      T-240  P.003/005  F-180

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LINDA MARIE PRATHER,                    §
                                        §
        PLAINTIFF,                      §
                                        §
v.                                      §          C.A. No. B-03-0136
                                        §
UTILIQUEST, L.L.C., MELANIE             §
MCGINNESS AND SUE OBREGON,              §
                                        §
        DEFENDANTS.                     §

## DECLARATION OF SUE OBREGON

1.      "My name is Sue Obregon. I am over the age of twenty-one years and am otherwise competent to testify to the facts set forth in this Declaration. All statements contained in this Declaration are true and correct and are based upon my personal knowledge.

2.      I have been employed by UtiliQuest, LLC (and, as it was previously known, Byers Engineering Company) since 1994. My current title is administrative assistant in the Harlingen office, and I held that position at all times relevant to the facts giving rise to this lawsuit. One of my administrative responsibilities is to coordinate our office's payroll practices with UtiliQuest's human resources department in Atlanta, Georgia.

3.      In late 2001, Dispatcher Linda Prather informed her co-workers, and me, that she was pregnant. Over the following months I became concerned about Ms. Prather because she had not elected to receive health insurance through UtiliQuest's medical benefit plan. On or about March 11, 2002, I met with Ms. Prather to inform her that even though she was not enrolled in the company's benefits plan, she would still be entitled to short-term disability benefits in the event that she would have to take a leave of absence due to her pregnancy. Subsequent to that conversation with Ms. Prather, I telephoned Melanie McGinness, UtiliQuest's

human resources/benefits coordinator in Atlanta to confirm that short-term disability benefits would be available to an employee who takes leave even though that employee had not elected medical coverage (including long-term disability benefits). Ms. McGinness confirmed that the benefits were available and stated that she would inform Ms. Prather of the availability of these benefits.

4.   Ms. Prather did in fact begin her leave on May 15, 2002 under orders from her physician. Under UtiliQuest's leave policy, any employees who require short-term disability leave are administratively terminated at the time leave begins. Once they present evidence that they are medically able to resume their duties, the company will return the employee to his or her position if it was not filled in their absence, or to another vacant position for which they are qualified. On June 10, 2002, I prepared an Employee Separation Form confirming that Ms. Prather had been administratively terminated due to her leave of absence, a true and correct copy of which is attached hereto as Defendants' Exhibit 1. On that form, I noted that Ms. Prather was "Recommended for Rehire."

5.   In June 2002, Ms. Prather personally brought me her short-term disability claim paperwork, in which Ms. Prather's physician stated that she would be able to resume her duties on August 7, 2002. A true and correct copy of this document is attached hereto as Defendants' Exhibit 2. However, Ms. Prather did not contact me to inquire about resuming her employment on August 7, 2002, and did not contact me or anyone else at the company until late September 2002, four months after she had originally taken leave. At that time, Ms. Prather visited me at the office and inquired about returning to work. I informed Ms. Prather that we had filled the dispatcher position but requested that she return in December because we expected a dispatcher

to resign at the beginning of January. Ms. Prather never returned, and never called me about the dispatcher position.

      6.     Ms. Prather was administratively terminated pursuant to the company's short-term leave policy. My only role in the termination was to forward the information to our human resources department and to fill out the Employee Separation Form (on which I recommended that she be re-hired upon application). Ms. Prather was treated exactly as any other non-pregnant employee would be treated under the policy. I did not intentionally inflict emotional distress upon Ms. Prather.

      7.     I declare under penalty of perjury that the foregoing is true and correct."

Executed on September 22, 2003.

SUE OBREGON

3

**EXHIBIT 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LINDA MARIE PRATHER, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | C.A. No. B-03-0136 |
| | § | |
| UTILIQUEST, L.L.C., MELANIE | § | |
| MCGINNESS AND SUE OBREGON, | § | |
| | § | |
| DEFENDANTS. | § | |

## DECLARATION OF MELANIE MCGINNESS

1.      "My name is Melanie McGinness. I am over the age of twenty-one years and am otherwise competent to testify to the facts set forth in this Declaration. All statements contained in this Declaration are true and correct and are based upon my personal knowledge.

2.      I have been employed with UtiliQuest, LLC (and, as it was previously known, Byers Engineering Company) since 1986, and currently work out of the Atlanta office. My current title is human resources/benefits coordinator, and I held that position at all times relevant to the facts giving rise to this litigation.

3.      As benefits coordinator, I am one of the individuals responsible for ensuring that UtiliQuest's employees are compensated and provided benefits in accordance with company policy and applicable state and federal laws. Pursuant to company policy, the administrators in each UtiliQuest office around the country are required to contact me in the event that a benefits issue arises with an employee. On or about March 12, 2002, I received a telephone call from Sue Obregon, the office administrator for UtiliQuest's Harlingen office. Ms. Obregon told me that Linda Prather, a dispatcher in her office, had informed her that she was pregnant and would eventually need to take time off work. Ms. Obregon informed me that Ms. Prather had not


elected health benefits or long-term disability benefits, and inquired as to whether she would still be eligible for short-term disability benefits. I confirmed to Ms. Obregon that Ms. Prather would be eligible for short-term disability benefits and informed her I would provide Ms. Prather with the necessary information.

4.      I first determined that, since the Harlingen office did not house at least 50 employees within a 75-mile radius, Ms. Prather was not eligible for leave under the Family and Medical Leave Act ("FMLA"). Since the FMLA did not apply, Ms. Prather would then be eligible for short-term disability benefits upon missing 10 consecutive business days of work. Those benefits are paid for 90 days. However, under the company's leave policy, any employee who takes short-term disability, but who is not otherwise qualified for leave under the FMLA, is administratively terminated effective on the last day worked. An employee who is administratively terminated under this scenario is then free to apply for re-hire in the event that they are released to return to work by their physician and the employee's former position has not been filled. I sent a memorandum to Ms. Prather on March 12, 2002, informing her of her FMLA rights, the circumstances under which she would qualify for short-term disability benefits, and the fact that she would be administratively terminated once she took disability leave, a true and correct copy of which is attached as Defendants' exhibit 3.

5.      Ms. Prather was, in fact, administratively terminated per company policy upon taking leave. Aside from my March 12, 2002 memorandum to Ms. Prather, I do not recall having any communications with her regarding her termination. I have never worked in the Harlingen office, have never met Ms. Prather personally, and do not recall ever speaking to her on the phone. Ms. Prather's pregnancy was irrelevant to her termination. The only reason for her termination was her status on short-term disability leave, and the fact that she did not

OCT-07-2003 TUE 02:24 PM                              FAX NO.                              P. 04

Oct-07-03    10:38am    From-LITTLER MENDELSON                              T-059   P.004/004   F-858

otherwise qualify for FMLA leave.  The company's leave policy is applied to all employees,
regardless of the medical condition which requires them to take leave.  I did not intend to inflict
emotional distress upon Ms. Prather.

      6.     I declare under penalty of perjury that the foregoing is true and correct."

Executed on October ___, 2003.

                                                               Melanie McGinness
                                                              Melanie McGinness



UTILIQUEST

500 Northridge Road, Suite 300
Atlanta, GA 30350
Phone: (678) 461-3900
Fax: (678) 461-3902

# Memo

| | |
|---|---|
| **To:** | Linda Prather |
| **From:** | Melanie McGinness -- HR/Benefits Coordinator |
| **Cc:** | Tony Castillo |
| **Date:** | 3/12/2002 |
| **Re:** | Short Term Disability and Family Medical Leave Act |

Linda this is in response to a phone conversation with Sue Obregon UtiliQuest has a program to help you during this time.

Short Term Disability benefits are available to all full-time employees after they have missed ten consecutive business days of work and cover the employee for up to 90 days of disability. The maximum benefit is $250 per week before taxes. Attached please find a UNUM Claim for Disability Benefits Application for Short Term Disability. Please note that you need to sign the bottom of Page 3 and fill out Page 2 of the application. Page 1 of the application needs to be filled out by your physician. Print clearly and use black ink if possible. Please return the form to me: UtiliQuest, Attn: Melanie McGinness, 500 Northridge Road, Suite 300, Atlanta, GA 30350.

Also, attached is a standard notice regarding an employee's rights under the Family and Medical Leave Act of 1993. In order to qualify for this benefit, an employee must work in an office that has 50 people within a 75 mile radius because of this you are not eligible for FMLA.

Unfortunately, we will not be able to hold your position open for the time that your are out on disability. You will be administrative terminated as of your last day worked. This will not affect your disability benefits. If you desire to return to work at UtiliQuest and there is an open position, you are welcome to reapply.

If you have any questions regarding this Memorandum or the attachments, please do not hesitate to call me at 678-250-2651.

**EXHIBIT 5**



**SALARIED EMPLOYEES**

Full-time exempt (not eligible for overtime) employees are eligible for up to ten (10) paid sick days per calendar year. In the case of illness, injury or an emergency situation, you should notify your supervisor/manager prior to the start of each work day.

There is no carryover of this time from year to year and exempt employees will not be paid for this time if they leave the company. Salaried employees on leave of absence are not eligible for this benefit.

## LEAVE OF ABSENCE

A leave of absence may be authorized as paid or unpaid by UtiliQuest for personal or military reasons. In addition, you are eligible for disability or family leave under the Family Medical Leave Act of 1993. A leave of absence must be requested in writing and approved by your supervisor/manager and Human Resources. Following is a brief description of the four types of leave.

If you are eligible for a bonus check, you will be paid for appropriate earnings through the last full month worked prior to a leave of absence or termination or in accordance with the Company's written incentive plan. Employees on leave of absence status are not eligible for any bonus.

PERSONAL LEAVE OF ABSENCE

Personal leave is authorized due to special personal needs for other than illness or emergency in your immediate family and will be unpaid. Personal leave begins on the first day of absence and is normally granted for a maximum period of thirty (30) days. An extension may be granted based on the nature of the individual's situation. Personal leave will be granted at the discretion of management. Approval of a personal leave request will depend upon the circumstances of the request, length of employment, attendance, work performance and workload. If you are enrolled in the Group Insurance Plan, while on personal leave, you will be responsible for paying your own medical coverage, as well as that of dependents (if applicable). You must have completed one (1) year of employment to be eligible for this leave.

Full-time employees are eligible for this benefit. Part-time employees and temporary individuals are not eligible for this benefit.

MILITARY LEAVE OF ABSENCE

If you are inducted into or enlist in the Armed Forces of the United States, you may request an unpaid leave of absence. You will be eligible for re-employment according to federal law.

Full-time and part-time employees are eligible for this benefit. Temporary individuals are eligible for this benefit if they are directly on the Company's payroll.

PERSONAL DISABILITY - FAMILY MEDICAL LEAVE ACT

A personal disability leave is authorized for up to 12 weeks in situations where your own serious health condition prevents you from performing the essential functions of your job provided you meet the eligibility requirements. Examples of disability include maternity, heart attack, cancer, multiple sclerosis, etc. This leave will be unpaid unless you have elected short term disability coverage.

Full-time employees are eligible for this benefit. Part-time employees may be eligible for this benefit. Temporary individuals are not eligible for this benefit.

FAMILY ILLNESS - FAMILY MEDICAL LEAVE ACT

An unpaid family leave of absence may be granted for up to 12 weeks for the birth or placement for adoption or foster care of a child and to give care for that child or the care of a spouse, child or parent of the employee, if such spouse, child or parent has a serious health condition and you meet the eligibility requirements.

Full-time employees are eligible for this benefit. Part-time employees may be eligible for this benefit. Temporary individuals are not eligible for this benefit.

For a more detailed policy/procedure for personal disability and family illness leave of absence, please contact Human Resources.

## WORKERS' COMPENSATION POLICY

Workers' Compensation insurance provides wage, medical and rehabilitation benefits if you are injured on the job or if you develop an occupational disease. Reporting requirements and benefit levels are regulated in each state by a State Workers' Compensation Board. Full-time and part-time employees are eligible for this benefit. Temporary individuals who are directly on the Company's payroll and are injured while performing work for UtiliQuest are eligible for this benefit.

REPORTING REQUIREMENTS

Any on-the-job injury, no matter how minor, must be reported immediately to your supervisor or the Safety Coordinator. You will be required to be drug tested in accordance with our Substance Abuse Policy after any injury. Medical care will be arranged as needed with an approved physician. **NOTE:** Failure to use an authorized doctor may jeopardize payment of your claim.

BENEFITS

You will receive full pay for the day a work related injury/illness occurs, if you are unable to complete your scheduled work day. If a Company approved physician recommends that you not return to work because of a job-related injury or illness, there is a waiting period required before workers' compensation insurance coverage begins which varies from state to state. Check with your supervisor/manager or Human Resources to determine what the waiting period is in your state. You may use vacation or personal/sick time, if available, during the waiting period or the time will be unpaid. Once the waiting period is completed, Workers' Compensation payments will commence through the workers' compensation insurance carrier if you meet the carrier's qualifications for the period of disability as defined by a licensed physician. Workers' compensation payments are in lieu of regular pay. Disability payments may continue as governed by the workers' compensation program. It is your responsibility to contact your supervisor/manager at a mutually agreed upon time interval while you are out of work.

When you return from a workers' compensation leave, you must give your supervisor/manager and Human Resources a **Return to Work Certification** signed by a licensed physician. If the physician specifies that you may not perform the essential functions of your job without accommodation, UtiliQuest will make every effort to modify your job responsibilities or identify an alternative job until you are able to resume your normal responsibilities.



# EMPLOYEE HANDBOOK

**AUGUST 1, 1999**

UtiliQuest 0060

# EXHIBIT 6



If you return to work and are required by the physician to receive additional medical care or physical therapy, the time must be scheduled, in advance, with your supervisor/manager and every effort should be made to minimize the impact on the work schedule by either scheduling the therapy at the beginning or the end of the work day, if possible. This time will be unpaid. Documentation of the treatment required must be provided to the Company.

Workers' compensation leave taken within a rolling twelve (12) month period will be measured backward from the date an employee uses any FMLA leave. This will reduce the amount of the twelve (12) week leave entitlement under the leave provisions of the Disability & Family Leave of Absence policy.

## HEALTH INSURANCE

A full-time employee is eligible for UtiliQuest medical, dental, and life insurance after the specified 90 days waiting period following the date of employment with UtiliQuest.

Full-time employees are eligible for this benefit. Part-time employees may be eligible for this benefit if they meet the hours requirement stipulated by the insurance carrier. Temporary individuals are not eligible for this benefit.

For specific coverage details, refer to the appropriate insurance summary plan documents.

## SHORT TERM DISABILITY (STD)

The Company offers short term disability insurance. You must meet the specified waiting period to be eligible for this coverage and the disability must be certified by a licensed physician. The benefit covers a disability after ten (10) consecutive work days up to a maximum of 11 weeks. If you qualify for this benefit, you will receive a percentage of your salary up to the established maximums for the period that you are certified disabled by a licensed physician.

Full-time employees are eligible for this benefit. Part-time employees and temporary individuals are not eligible for this benefit.

For specific coverage information, refer to the summary plan description.

## 401K PLAN

This plan provides you with an opportunity to save toward retirement on a pre-tax basis. You are eligible for participation after the specified waiting period if you are 21 years of age and work the minimum number of hours specified by the plan. The Company does provide a match.

Full-time employees are eligible for this benefit. Part-time employees may be eligible for this benefit if they meet the hours requirement stipulated by the plan. Temporary individuals are not eligible for this benefit.

For specific coverage details, refer to the appropriate summary plan document.

## SECTION 125



# EMPLOYEE HANDBOOK

**AUGUST 1, 1999**

UtiliQuest 0060

**EXHIBIT 7**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| LINDA MARIE PRATHER, | § | |
| | § | |
| | § | **CIVIL ACTION NO. B-03-136** |
| V. | § | |
| | § | |
| UTILIQUEST, L.L.C., MELANIE | § | |
| MCGINNESS AND SUE OBREGON | § | |

## DECLARATION OF LINDA PRATHER

1.    "My name is Linda Prather . I am over the age of twenty-one years and am otherwise competent to testify to the facts set forth in this Declaration.  All statements contained in this Declaration are true and correct and are based upon my personal knowledge.

2.    I was employed by UtiliQuest for over one year when I was terminated due to my pregnancy.

3.    I filled out the short term disability forms, sent them to the insurance company,  but I never received a response from the  insurance company.

4.    I was replaced by a person who was outside the protected class, namely a male.


I declare under penalty of perjury that the foregoing is true and correct."


Executed this 22 day of March 2004.

*Linda Prather*

Linda Prather

# EXHIBIT 8

## Sue Obregon

| | |
|---|---|
| **From:** | Melanie McGinness |
| **Sent:** | Tuesday, January 08, 2002 11:35 AM |
| **To:** | Sue Obregon |
| **Subject:** | RE: leave of absence |

If you don't have 50 she will be terminated and if you have an opening she can be rehired.

Melanie

———Original Message———
**From:** Sue Obregon
**Sent:** Tuesday, January 08, 2002 12:04 PM
**To:** Melanie McGinness
**Subject:** RE: leave of absence

NO, WE ONLY HAVE 45 AND THAT INCLUDES CORPUS CHRISTI
OFFICE WHICH IS THE NEAREST OFFICE AND THAT IS OVER 130
MILES AWAY.
SO, WHEN SHE REQUESTS HER LEAVE OF ABSENCE , IS HER JOB
SECURE OR CAN I TERMINATE HER IF I NEED TO REPLACE HER
AT ANYTIME AFTER THAT
SUE

———Original Message———
**From:** Melanie McGinness
**Sent:** Tuesday, January 08, 2002 7:53 AM
**To:** Sue Obregon
**Subject:** RE: leave of absence

She would not be eligible for any time.  You don't have 50 employees within a 75 mile radius
now?

Melanie

———Original Message———
**From:** Nadine Litton
**Sent:** Tuesday, January 08, 2002 7:07 AM
**To:** Melanie McGinness
**Subject:** FW: leave of absence

———Original Message———
**From:** Sue Obregon
**Sent:** Monday, January 07, 2002 5:40 PM
**To:** Nadine Litton
**Subject:** leave of absence

Nadine,
If an employee does not have medical insurance thru the Company
but will be off due to pregnancy, if this office does not meet the
standards for FMLA due to lack of emplyees, how much time can
she be off ?  I was under the impression that
it was 4 weeks, with no leave or vacation left. Can you clarify that?
Thanks,
sue



1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LINDA MARIE PRATHER,                       §
                                           §
                                           §        CIVIL ACTION NO. B-03-136
V.                                         §
                                           §
UTILIQUEST, L.L.C., MELANIE                §
MCGINNESS AND SUE OBREGON                  §

## DECLARATION OF RUBEN R. PENA

1.  "My name is Ruben R. Pena. I am over the age of twenty-one, of sound mind, and have personal knowledge of all facts set forth in this affidavit. I am an attorney licensed to practice law within the state of Texas and in the United States District Courts for the Southern District of Texas.

2.  Attached hereto and incorporated by reference as Exhibit 2 is a true and correct copy of the declaration of Sulema Obregon.

3.  Attached hereto and incorporated by reference as Exhibit 3 is a true and correct copy of the declaration of Melanie McGinness.

4.  Attached hereto and incorporated by reference as Exhibit 4 is a true and correct copy of Plaintiff's initial disclosures dated December 1, 2003.

5.  Attached hereto and incorporated by reference as Exhibit 5 is a true and correct copy of Plaintiff's Request for Productions No. 5 and 40 of Defendants UtiliQuest, Obregon and McGinness.

6.  Attached hereto and incorporated by reference as Exhibit 7 is a true and correct copy of excerpts from the deposition of transcript of Sulema Obregon, taken February 12,

2004.

7.    Attached hereto and incorporated by reference as Exhibit 8 is a true and correct copy of Request for Production no. 33 to Defendant McGinness..

8.    Attached hereto and incorporated by reference as Exhibit 9 is a true and correct copy of McGinness declaration.

9.    Attached hereto and incorporated by reference as Exhibit 10 is a true and correct copy of Defendant UtiliQuest's Leave of Absence Policy.

10.   I declare under penalty of perjury that the foregoing is true and correct."

Executed on March /9 ^th/, 2004.

Ruben R. Pena

I

Prather\Respns.Sum