

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

United States District Court
Southern District of Texas
ENTERED

JUL 2 6 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| LINDA MARIE PRATHER<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. B-03-136 |
| UTILIQUEST, L.L.C., MELANIE<br>MCGINNESS, and SUE OBREGON<br>Defendants. | §<br>§<br>§ | |

## MEMORANDUM OPINION

Plaintiff Linda Marie Prather ("Prather") brought suit against Defendant Utiliquest, L.L.C. ("Utiliquest") for discrimination under the Texas Commission on Human Rights Act ("TCHRA"), intentional infliction of emotional distress, and negligent supervision and misrepresentation. Before the court is Defendant Utiliquest's Motion for Summary Judgment. After a thorough review of the parties' briefs, the relevant evidence, and the applicable law, for the reasons set forth below, the court **GRANTS** Utiliquest's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Utiliquest hired Prather as a dispatcher for its Harlingen, Texas, facility on or about February 27, 2001. Under Utiliquest's personal/sick time policy, hourly employees, such as Prather, accrue up to six personal/sick days per calendar year.[1] Id. Up until November 2001, when Prather learned that she was pregnant, her attendance had been substandard and her use of

---

[1] As Prather had begun employment after the commencement of the 2001 calendar year, the prorated amount of personal/sick days she could and did accrue during 2001 was five days.

personal/sick time arguably excessive.² Upon discovering she was pregnant, Prather notified Obregon. Shortly thereafter in November, due to complications associated with her pregnancy, Prather was placed on bed rest for approximately six and one-half days.

Prather had not elected to carry any medical benefits when she began working for Utiliquest, and she was not covered by the Family Medical Leave Act ("FMLA").³ Consequently, Obregon offered to find out what, if any, benefits for which Prather might be eligible with respect to her pregnancy. Obregon also told Prather that she would contact Melanie McGinness ("McGinness"), Utiliquest's Human Resource/Benefits Coordinator, to determine how much time, if any, Prather could take off from work after she delivered her baby. Sometime in March 2002, Obregon advised Prather that she would be eligible for short-term disability benefits upon missing ten consecutive business days of work, and those benefits would last for ninety days. Obregon also apprised Prather that, as per Utiliquest's policy, if she needed to take a leave of absence upon the arrival of her baby, she must use her personal/sick and/or vacation time. If Prather chose to take a leave, but had no such time accrued, she would be subject to administrative termination.

---

² As per Utiliquest's employment policy, within the first ninety days of employment, use of personal/sick days is not permitted. Utiliquest's Motion at Exhibit 5. During Prather's ninety-day probation period, she called in sick three days, left work early two days, and was late twice. Id. at Exhibit 7. Due to these absences, Sue Obregon "Obregon," Utiliquest's office supervisor, and Tony Castillo, the General Manager, met with Prather and issued a verbal warning that she could receive a written warning or be terminated if her attendance did not improve. Id. at Exhibit 8. Prather called in sick again on August 2 and 29, 2001, thus depleting her total allotted personal/sick days for the rest of 2001. Id. at Exhibit 7.

³ Utiliquest does have a FMLA policy, where eligible employees can take up to twelve weeks of qualifying unpaid FMLA leave and have the right to be reinstated thereafter to their same or equivalent position. However, because fewer than fifty employees are at its Harlingen facility or within a seventy-five mile radius of same, those employees do not qualify for FMLA leave.

She was further advised that when her leave ended, she would be eligible to return to her position if it had not been filled in her absence or to another vacant position for which she was qualified.

By the end of March 2002, Prather had exhausted all of her personal/sick days for that calendar year. On May 15, 2002, under her physician's orders (her doctor ordered bed rest for the one month remaining in her pregnancy), she took a leave of absence and, as per her physician, was medically able to return to work on August 7, 2002.[4] Utiliquest administratively terminated Prather on May 15, 2002, upon commencement of her leave, as she had no accrued sick or vacation time to cover the leave. Prather reapplied for her position at Utiliquest in late September, at which time Obregon advised her that her position had been filled, but another position might become available in January, when a dispatcher was planning to leave. Obregon told Prather to inquire again in December; however, Prather never did.

Prather filed suit originally in state court on June 30, 2003, against Utiliquest, Obregon, and McGinness, alleging wrongful termination because she was pregnant. Specifically, Prather alleged 1) national origin discrimination in violation of the TCHRA; 2) sex discrimination in violation of same; 3) retaliation in violation of same; 4) negligent supervision, retention, and misrepresentation; and 5) intentional infliction of emotional distress. Utiliquest removed the case to federal court on August 1, 2003, on the grounds of diversity and fraudulent joinder of

---

[4] Whether Prather was actually paid short-term disability benefits while on leave is unclear. The record reflects that paperwork with respect to same was completed. Utiliquest's Motion at Exhibit 12. Prather, however, maintains that she never received any benefits, though she offers no explanatory reason. Prather's Response at Section B.2 (response contains no page numbers). Nevertheless, no complaint regarding these benefits is made in this lawsuit, and, as shown below, resolution of this dispute is irrelevant to the issue whether Utiliquest wrongfully terminated Prather, as an employee could receive such benefits for the full ninety days and still be administratively terminated.

3

Obregon, and Prather moved to remand the case back to state court. This court ordered Utiliquest to file additional briefing, and Obregon and McGinness also filed a joint motion for summary judgment. Prather filed a response but failed to address any of their claims.

On March 31, 2004, the court dismissed Obregon with prejudice from this case upon finding that she had been fraudulently joined. Consequently, the court denied Prather's motion to remand, as Obregon's citizenship was disregarded for purposes of removal and complete diversity existed between the parties. The court also granted McGinness' summary judgment motion. Utiliquest, therefore, is the only remaining defendant.

Utiliquest filed a motion for summary judgment on all of Prather's claims. Prather filed a response in which she conceded that she has no viable national origin or retaliation claims against Utiliquest.[5]

## II. STANDARD OF REVIEW

A district court can grant a motion for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 285 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact and that it is entitled to a

---

[5] The court notes that Prather's counsel agreed with defense counsel during Prather's deposition on February 12, 2004, that he intended to amend the petition to delete the claims for negligence. Utiliquest Motion at 2; Exhibit 1 (Prather's Deposition at 78:25 and 79:1-5). Utiliquest raised Prather's counsel's concession as part of its summary judgment motion, id. at 2, and Prather did not object in her response. Consequently, the court will honor the stipulation made by Prather's counsel at Prather's deposition.

judgment as a matter of law. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998); Fed.R.Civ.P. 56(c). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it need not negate all of the essential elements of the nonmovant's case. See Wallace v. Texas Tech University, 80 F.3d 1042, 1047 (5th Cir.1996); Little v. Liquid Air Corporation, 37 F.3d 1069, 1075 (5th Cir.1994). In order for the court to find there are no genuine factual issues, it must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant. See Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. See Celotex Corp., 477 U.S. at 325; Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996).

If the moving party meets its initial burden, the burden shifts to the nonmovant to demonstrate that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue for trial. Celotex Corp., 477 U.S. at 325. A court will consider all of the pleadings, discovery documents, and affidavits on file and construe them in the light most favorable to the non-moving party. Id. at 323. The nonmoving party cannot discharge its burden by alleging mere legal conclusions; instead, it must present affirmative evidence in order to defeat a properly supported motion for summary judgment. See Matsushita Elec. Indus., 475 U.S. at 586;

MacMillan v. United States, 46 F.3d 377, 380 (5th Cir.1995) (holding that the nonmoving party may not carry its burden by simply showing that there is some metaphysical doubt as to the material facts). Nonmovants are required to identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim. Stults, 76 F.3d at 656.

## III. DISCUSSION

### 1. Pregnancy Discrimination Claim

#### A. Analytical Framework

Prather asserts that Utiliquest discriminated against her on the basis of sex, i.e., predicated upon her pregnancy, in violation of the TCHRA, Tex. Lab. Code Ann. § 21.01 *et seq.*[6] The Texas

---

[6] In her petition, Prather alleges she was wrongfully terminated because she was pregnant and filed a sex discrimination suit pursuant to the TCHRA. Prather's Petition at 2, 4. In her response, she speaks of her claim as a "Title VII/Tex. Labor Code pregnancy discrimination claim[]." Prather's Response at Section III. As discussed above, claims brought pursuant to the TCHRA are analyzed using case law interpreting Title VII claims. Moreover, Prather's claim of sex discrimination was brought under the TCHRA, and such a claim encompasses pregnancy discrimination. Specifically, Section 21.051 of the TCHRA provides that:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
> 1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; ...

Tex.Lab.Code Ann. § 21.051. Section 21.106 addresses sex discrimination in relation to pregnancy as follows:

> (a) A provision in this chapter referring to discrimination because of sex or on the basis of sex includes discrimination because of or on the basis of pregnancy, childbirth, or a related medical condition.
> (b) A woman affected by pregnancy, childbirth, or a related medical condition shall be treated for all purposes related to employment, including receipt of a benefit under a fringe benefit program, in the same manner as another individual not affected but similar in the individual's ability or inability to work.

Legislature modeled the TCHRA on federal law for the purpose of executing the policies embodied in Title VII of the Federal Civil Rights Act of 1964. See Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003). Accordingly, when a court reviews a case brought under the TCHRA, it looks not only to the statute but also to the analogous federal provisions contained in Title VII and to federal cases interpreting same. Shackelford v. Deloitte & Touche, L.L.P., 190 F.3d 398, 404, n. 2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical."); Rios v. Ind. Bayer Corp., 965 F.Supp. 919, 921 (S.D.Tex. 1997) ("[C]ourts must look to analogous federal law when resolving disputes brought under the [TCHRA].").

"Title VII discrimination can be established through either direct or circumstantial evidence."[7] Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003) (citation omitted). As Prather has submitted circumstantial evidence that pregnancy was a motivating factor in Utiliquest's decision to terminate her, the burden-shifting framework laid out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable. Wallace v. Methodist Hosp. System, 271 F.3d 212, 219 (5th Cir. 2001) ("If the plaintiff produces only circumstantial evidence of discrimination," then the McDonnell Douglas burden-shifting analysis "guides [the] inquiry"). Under this framework, Prather must first make out "a prima facie case of discrimination, which, if established, raises a presumption of discrimination." Id. This

---

Tex.Lab.Code. Ann. § 21.106. Therefore, despite, Prather's inconsistent language, her claim is properly analyzed as a pregnancy discrimination claim under the TCHRA.

[7] "Direct evidence" in the employment discrimination context is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." Mooney v. Aramco Services Co., 54 F.3d 1207, 1217 (5th Cir. 1995) (citing Brown v. East Mississippi Electric Power Association, 989 F.2d 858, 861 (5th Cir. 1993)).

presumption shifts the burden to Utiliquest to "produce a legitimate nondiscriminatory reason for the adverse employment decision." Id. If Utiliquest meets this burden, "the presumption of discrimination created by the prima facie case disappears," and Prather must present credible evidence that Utiliquest's proffered nondiscriminatory reason was a pretext for her termination. Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). Once the pretext stage has been reached, "the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." Shackelford, 190 F.3d at 404.

### B. Application of Analytical Framework

### I. Prima Facie Case

In light of this analytical framework, the court now turns its attention to Prather's claim of discrimination. To establish a prima facie case of employment discrimination under the TCHRA, Prather must prove that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position she held; and 4) after her discharge she was replaced with a person who is not a member of the protected class.[8] McDonnell Douglas, 411 U.S. at 802; Norris v. Hartmarx Speciality Stores, Inc., 913 F.2d 253, 254 (5th Cir. 1990).

Utiliquest contends that Prather fails to establish a prima facie case of pregnancy discrimination because, under the fourth prong of the test, she is unable to show that an employee outside of her protected class was treated more favorably.[9] Utiliquest's argument, however,

---

[8] "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. Ackel v. National Communications, Inc., 339 F.3d 376, 385 (5th Cir. 2003).

[9] Utiliquest does not contest that Prather satisfies the other three elements of her prima facie case.

demonstrates a misunderstanding of the applicable law. "The elements of a plaintiff's prima facie case necessarily vary according to the facts of the case and the nature of the claim." LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996). When establishing a case for wrongful termination, the fourth element is that the plaintiff was replaced after her discharge with a person who is not a member of the protected class. Auer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999). "In cases where the employer discharges the plaintiff and does not plan to replace her, ... the fourth element is ... that after [the] discharge others who were not members of the protected class remained in similar positions." Faruki v. Parsons S.I.P. Inc., 123 F.3d 315, 318 (5th Cir. 1997) (internal quotations omitted).

Prather maintains that Utiliquest replaced her with a male, who, in this case, is an employee outside her protected class, i.e., a nonpregnant employee. See Prather's Response at Exhibit 8 (Prather's Declaration); Shaw v. Harper & Martinson, Marc Fanning and Jack Ewing, No. 3-95-CV-2862-AJ, 1997 WL 726439, *1 (N.D.Tex. Nov. 14, 1997) (holding that the plaintiff failed to make a prima facie case of pregnancy discrimination in violation of the Pregnancy Discrimination Act because she proffered no evidence that she was replaced by a person who was not pregnant or that she was treated differently than were nonpregnant persons). Utiliquest presents no evidence to dispute this fact. When reviewing a summary judgment, a court accepts as true all evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Accordingly, Prather satisfies the fourth prong of the test and has established a prima facie case of pregnancy discrimination.

## II. Pretext

Utiliquest contends that, even if Prather has made a prima facie showing of discrimination, she fails to demonstrate that its articulated reason for terminating her was a pretext for discrimination. Utiliquest maintains it terminated Prather pursuant to its neutral employment policy that subjects to administrative termination all employees who take a leave of absence but have no available personal/sick or vacation time to cover the leave. Utiliquest's Motion at Exhibits 6, 12, & 19. The summary judgment record reveals that, since Utiliquest opened its Harlingen facility on April 1, 1998, it has administratively terminated three employees—two males and one nonpregnant female—for taking a leave of absence for either an on-the-job injury or personal illness. Utiliquest's Motion at McGinness's Declaration. Two of those employees reapplied for a position when their leave ended and were rehired. Id. Company-wide, five employees not covered by the FMLA and who had taken a leave of absence were administratively terminated. Id. Two employees took maternity leave, and the other three employees—two males and one female—took leave for nonpregnancy related issues. Id. Forty-two employees who were not covered by the FMLA because they were employed less than a year took a leave of absence and were administratively terminated. Eight of these employees took maternity leave, sixteen took a leave due to illness, and the other eighteen took a leave for unknown reasons[10] Id.

The record further shows that Prather was advised by mid-March, prior to taking her maternity leave, of Utiliquest's policy and understood that she would be administratively terminated if she chose to take a leave of absence when she had her baby and had no vacation or personal/sick time

---

[10] The record does not reflect how many of the thirty-two employees who did not take maternity leave were either males or nonpregnant females.

to cover same. Utiliquest's Motion at Exhibit 1 (Prather's Deposition at 37:5-21); Exhibit 12. Upon taking her maternity leave in May 2002, she had no such time available. Id. at Exhibit 7. Utiliquest's "Separation Form," which was completed on June 10, 2002, by Obregon reflects that Obregon recommended that Prather be rehired once her leave ended on August 7, 2002. Prather reapplied for her position at Utiliquest in late September, at which time Obregon advised her that her position had been filled, but another position might become available in January, when a dispatcher was planning to leave. Obregon told Prather to inquire again in December; however, Prather never did.

Accordingly, Utiliquest has articulated a legitimate nondiscriminatory reason for terminating Prather and satisfyies its burden of production.[11] The burden is now on Prather to demonstrate that this articulated reason was merely a pretext for discrimination. Wallace, 271 F.3d at 220. To establish pretext, Prather must present evidence to rebut the nondiscriminatory reason Utiliquest articulates. Id. Prather "may establish pretext by showing that a discriminatory motive more likely motivated [Utiliquest's] decision, such as through evidence of disparate treatment, or that [Utiliquest's] explanation is unworthy of credence." Id. (quotation omitted). To prove disparate treatment, Prather must demonstrate that the conduct for which she was fired was nearly identical to that engaged in by an employee not within her protected class and who received more favorable treatment. Id. at 220-21. Thus, she has to provide proof of a nonpregnant employee

---

[11] To satisfy its burden of production, Utiliquest must merely produce evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (at this stage of analysis, credibility determinations are not warranted as the burden-of-production determination necessarily precedes the credibility assessment stage).

who took a leave of absence without available accrued personal/sick or vacation time to cover the leave and who was not administratively terminated for doing so.

"An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578. To demonstrate that Utiliquest's justification is unworthy of credence, Prather "need only bring evidence that enables the jury to disbelieve that [Utiliquest's] proffered justification truly motivated the adverse employment action." Id. at 580, n. 2. "Evidence demonstrating that [Utiliquest's] explanation is false or unworthy of credence, taken together with [Prather's] prima facie case, is likely to support an inference of discrimination, even without further evidence of [Utiliquest's] true motive." Id. at 578. "The rare instances in which a showing of pretext is insufficient to establish discrimination are 1) when the record conclusively reveals, some other, nondiscriminatory reason for a defendant's decision or 2) when the plaintiff creates only a weak issue of fact as to whether the defendant's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred." Id. (citation omitted).

Prather offers no evidence to satisfy her burden of showing that Utiliquest's articulated reason was merely a pretext for discrimination. Instead, she maintains that Utiliquest's failure to respond to her discovery request for production of documents precludes her from presenting evidence supporting pretext. This court, however, cognizant of Prather's allegation, had specifically noted in its April 26, 2004 Order that she simply had to file a motion to compel disclosure pursuant to Rule 37 of the Federal Rules of Civil Procedure if a problem existed. No such motion was ever filed. The court therefore finds that Prather had ample opportunity to develop the record, and her argument is without merit. Summary judgment is properly entered against a party if after

adequate time for discovery, she fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

Prather also maintains that Utiliquest proffered "inconsistent" reasons for her termination, alleging Utiliquest first claimed it fired Prather because of her excessive absenteeism and then changed its reason to Prather taking maternity leave without having accrued time to cover the leave. Prather's Response at Section B.1. This argument is also without merit. Utiliquest has consistently asserted that taking leave without the requisite accrued sick or vacation time was the reason Prather was administratively terminated. In its motion, Utiliquest merely highlighted Prather's absences to demonstrate that, at the time she took her leave, her sick and vacation time had been depleted.

The only connection found in the record between Prather's termination and a discriminatory enmity is Prather's subjective belief that her pregnancy resulted in being discharged by Utiliquest. Such a belief, no matter how sincere, is insufficient to create an issue of material fact. See Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997) (a plaintiff's "subjective interpretation of [her supervisor's] comments is insufficient to raise a fact issue as to sexual harassment."); Lechuga v. Southern Pacific Transportation Company, 949 F.2d 790, 798 (5th Cir. 1992) ("Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment.") (footnotes omitted); Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992) ("Conclusory assertions cannot be used in an affidavit on summary judgment.").

Accordingly, Prather has failed to create a genuine issue of material fact that Utiliquest's reason for terminating her was a mere pretext for pregnancy discrimination. As Prather has

produced no evidence of pretext, summary judgment in favor of Utiliquest is appropriate. See West v. Nabors Drilling USA, Inc., 330 F.3d 379, 385 (5th Cir. 2003).

## 2. State Law Claims

Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." 28 U.S.C. § 1367(a); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (quotation omitted). Yet a federal court's exercise of jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's rights." United Mine Worker's of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Consequently, a "federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Carnegie-Mellon, 484 U.S. at 350.

In the present case, these factors favor retaining jurisdiction over Prather's state law claim of intentional infliction of emotional distress. The parties have been before the court for almost one year, final pretrial is scheduled for August, and the parties have engaged in extensive briefing. Moreover, Utiliquest may have undertaken considerable discovery, and the court has spent a fair amount of time considering the merits of the case on both the federal and state law claims. Consequently, the court will exercise supplemental jurisdiction over Prather's pendent state law claim. See Smith v. Amedisys, Inc., 298 F.3d 434, 446-47 (5th Cir. 2002) (holding that a district court did not abuse its discretion by retaining jurisdiction over state law claims after dismissing

federal claims where the parties had already conducted extensive discovery and exhaustive pleading on state law claims, the court was intimately familiar with the state law claims, and litigation had been pending for over three years).

### A. Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, Texas law requires a finding of four elements: 1) the defendant acted intentionally or recklessly; 2) the defendant's conduct was extreme or outrageous; 3) the defendant's actions caused the plaintiff emotional distress; and 4) the emotional distress suffered by the plaintiff was severe. Dean v. Ford Motor Credit Co., 885 F.2d 300, 306 (5th Cir.1989). Whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is a question of law to be determined by the court. Wornick Co. v. Casas, 856 S.W.2d 732, 734 (Tex. 1993). In exercising its duty to resolve this question, a court must determine whether the conduct at issue surpassed "all bounds of decency" such that it is "utterly intolerable in a civilized community." Dean, 885 F.2d at 306 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d.).

Neither Prather's Petition or Response contain any evidence indicating that Utiliquest's conduct rises to the level of outrageousness necessary to succeed on a claim of intentional infliction of emotional distress. Termination alone is insufficient to constitute outrageous behavior. Burden v. General Dynamics Corp., 60 F.3d 213, 221 (5th Cir. 1995); Hagen v. Beauticontrol Cosmetics, Inc., No. CIV. A.398-CV-1199, 1998 WL 355479, * 2 (N.D.Tex. June 30, 1998).

### IV. CONCLUSION

Based on the foregoing, looking at the summary judgment evidence in the light most favorable to Prather, the court holds that she did not raise any genuine issue of material fact for trial. The

motion for summary judgment filed by Utiliquest is therefore granted.

Signed in Brownsville, Texas, this 26rd of July, 2004.

_____
Andrew S. Hanen
United States District Judge